SAGINAW, TUSCOLA & HURON RAILROAD CO. *v.* BORDNER.

1. RAILROAD COMPANIES—CONDEMNATION PROCEEDINGS—SERVICE OF NOTICE.

Under 3 How. Stat. § 3332, providing for the service of notice on nonresidents in condemnation proceedings, it is optional whether notice be served on the agent within this State, or on the owner within or without the State.

2. SAME—NECESSITY.

In proceedings by a railroad company to condemn a gravel pit, the fact that the company already owns large quantities of gravel, and that it has sold a number of car loads, is not conclusive against its right to condemn, but is proper to be considered by the jury, in connection with testimony tending to show that the land in question is necessary to enable the company to operate its existing beds with economy and safety.

3. SAME—PROVINCE OF JURY.

The jury having determined the necessity, the appellate court will not review the question further than to ascertain that there was evidence to support the verdict.

Appeal from the probate court of Huron county; John Lange, Judge. Submitted January 8, 1896. Decided January 28, 1896.

Condemnation proceedings by the Saginaw, Tuscola & Huron Railroad Company against David R. Bordner and Henry H. Bordner. Respondents appeal. Affirmed.

*George W. Clark* ( *T. W. Atwood*, of counsel), for appellants.

*W. T. Bope*, for appellee.

HOOKER, J. The petitioner, a railroad company, built its railroad across section 13 in the township of Colfax, Huron county, about 1886, most of the deeds of right of way being procured in 1885. At that time, David R. Bordner owned the N. ½ of the S. W. ¼ of section 13; also a strip of land one rod wide off the west side of the S. E. ¼ of the S. W. ¼ aforesaid. Bordner claims that a highway existed on the line between sections 13 and 24; but, if there is any evidence of such existence, it is a bare scintilla. Certainly, there has been none there since, for petitioner's railroad and right of way are upon that line, and the brief for respondents states that such highway was vacated at the time said railroad was built. The accompanying plat shows the situation of the premises.

The petitioner has acquired the entire S. ½ of the S. W. ¼ for a gravel pit, which, as will be seen from the diagram, was cut in two about the middle by respondents' strip of land. The testimony shows that the gravel is about 22 feet deep, and the petitioner's tracks could not run through both pits, connecting with the main track at both ends, by reason of their inability to cross respondents' strip. It has therefore been compelled to use short spurs. Proceedings were had by which that parcel was condemned, and the respondents bring the case here for review.

Two questions are raised. The first goes to the juris-

diction. Respondent David R. Bordner claims and shows that in January, 1886, he deeded the W. ½ of the N. ½ of the S. W. ¼ of section 13 to his brother, Henry

H. Bordner, who lived in Pennsylvania at the time, and has ever since, and that his said brother also held a mortgage upon the parcel sought to be condemned at the time these proceedings were instituted. Proof was made by affidavit that a copy of the petition and the statutory notice were mailed to Henry H. Bordner, by registered letter, in due season, and that his registry return receipt, signed by him, was received by the affiant in due season. As the record stands, it shows personal service out of the State, the signature to the receipt being proved. It is contended that service upon Henry H. Bordner at his

home cannot be treated as sufficient, unless the record shows that he had no agent in Michigan upon whom it could be served. We think the statute permits personal service out of the State, or service upon an agent, if there be one, at the option of the petitioner. See 3 How. Stat. § 3332.

The second question goes to the merits of the proceeding. It is said that the record does not show that the petitioner needs this land for gravel, that it appears that it has but 66 miles of track, and that it has 85 acres of gravel in the vicinity of Bad Axe, some of which is in beds 22 feet deep, and there is no evidence as to the amount needed for railway purposes. Again, it is contended that the company is seeking to acquire gravel for speculative purposes, it appearing that it has sold large quantities of this gravel in Bay City. It is also said that the petitioner seeks to condemn this land merely for its convenience, so that it may unite the two spurs; and it is argued that the land of the respondents cannot be taken under the right of eminent domain when sought by the petitioner for mere convenience or gain. It is a well-known fact that gravel is essential for ballast upon railway tracks. The record shows that these parcels comprise the most of the gravel that petitioner owns. It also shows that the excavation and removal of the gravel would be attended with less danger if the track could be connected with the main line at both ends, and that it could be removed more cheaply. This testimony is proper to be considered by the jury as bearing upon the question of necessity. The statute (3 How. Stat. § 3323) authorizes the condemnation of gravel beds. In this case the jury have determined the necessity, upon testimony tending to show it, and a view of the premises, and we will not review the question further than to ascertain that there was evidence to support the verdict. *Toledo, etc., R. Co. v. Dunlap*, 47 Mich. 467; *Port Huron, etc., R. Co. v. Voorheis*, 50 Mich. 511. It is doubtless true that the railroad company would not be willing to pay $250, the

amount of the award, for half an acre of land, were it not for the fact that its possession would facilitate the use of the pits now belonging to it; but that fact is not conclusive, nor is the fact that it has sold some hundred car loads of gravel. They were proper subjects for consideration by the jury, to whom they were doubtless presented.

We find no error in the proceedings, and the order of the probate court will therefore be affirmed, with costs.

The other Justices concurred.