CASE 74—PROCEEDINGS BY THE ELY JELLICO COAL COM-
PANY AGAINST THE GREASY CREEK MINERAL
COMPANY AND OTHRS TO CONDEMN LAND FOR
A SPUR RAILROAD TRACK.—March 10, 1909.

## Greasy Creek Min'l Co. v. Ely Jellico Coal Co

Appeal from Knox Circuit Court.

H. C. FAULKNER, Circuit Judge.

From a judgment of condemnation and damages defendants appeal—Affirmed.

1. Eminent Domain—Acquisition of Property for Public Use—
Statutes.—Ky. St. 1909, section 815 (Russell's St. section
5352), authorizing any person operating a mine within three
miles of a railroad to construct a spur road from the mine
to the railroad and to condemn land necessary therefor, and
providing that the owner of such road shall be governed by
the laws relating to other railroads, brings such roads within
the general laws regulating railroads, so that the condemna-
tion of lands therefor is for a public use.

2. Eminent Domain—Extent of Power to Condemn Land.—An excessive taking or a taking of more than is required is beyond the scope of delegated power to condemn land

3. Eminent Domain—Taking of Land—"Necessity."—Where an operator of a mine maintaining a spur track from the mine to a railroad needed the land of another to reduce grades and curves in the track, and thereby eliminate dangers to operatives, and also needed the land of another for terminal facilities to avoid an extraordinary outlay, a "necessity" existed for the condemnation of the lands necessary within Ky. St. 1909, section 815 (Russell's St. section 5352), authorizing the condemnation of such land as may be necessary for the spur track; a "necessity" within the statute being a convenience substantially advancing the public interest by making the road safer or better.

4. Eminent Domain—Taking of Land—One building a railroad on the land of another and so near to the tracks of the latter as to weaken the support of the roadbed must build a retaining wall, and construct and operate its road prudently and with regard to the rights of the latter.

J. D. BLACK, J. H. WILSON, P. S. BLACK and H. N. Camp, for appellants.

Opinion of the Court by Judge O'Rear—Affirming.

Appellant Greasy Creek Mineral Company owns a tract of land in Knox county adjacent to the Cumberland Valley Branch of the Louisville & Nashville Railroad. It operates a coal mine on this land. In order to reach its mine with cars, it has built a spur track nearly a mile long. The land is mountainous. Adjoining appellant's land is another tract of about 600 acres owned by appellee. The latter opened a coal mine on its land. In order to reach its mine, it was necessary to build a spur railroad track about a mile long from the Louisville & Nashville line. This spur has to be on a different grade from appellants' track, though running about parallel with it.

The valley between the mountains which it was neces-
sary to follow in order to build the two tracks is
narrow. The branch is the dividing line between
appellants' and appellee's lands. There is another
colliery in the same valley, known as the Hughes
mine, which is below appellee. There was also a rail-
road to it. When appellee started to build the track
to its mine, it was unable to agree with appellant for
the use of any of the latter's land as a right of way
for the track. This proceeding was then instituted
under section 815, Ky. St. (Russell's St. section 5352),
to condemn two strips of land belonging to appellant
as a part of a right of way for the use of appellee's
railroad tracks. The proceeding was resisted in the
county court. There the commissioners and the court
fixed upon a sum as compensation for the land and
the damage done to the remainder of appellants' tract
by the prudent operation of appellee's road. On
appeal, substantially the same damage was awarded
by the jury in the circuit court. It is not contended
by appellant that the sum awarded is inadequate. It
complains because (1) of the alleged unconstitution-
ality of section 815, Ky. St.; and (2) that the taking
of the land in question was not necessary to enable
appellee to build a railroad to its mine. Section 815,
Ky. St., is as follows: "Any person engaged in operat-
ing a mine or stone quarry within three miles of any
navigable stream or railroad, may, for the purpose
of transporting material to and from such stream or
railroad and such mine or quarry, construct and
operate a railroad from such mine or quarry to the
most convenient and accessible point on such stream
or road, and may, under the general laws, condemn
such land as may be necessary, not exceeding fifty feet

in width for each track necessarily constructed, and not exceeding two acres of land at such railroad or stream for the purpose of necessary buildings. The owner or operator of such road shall be, so far as they are applicable, governed and controlled by the laws relating to other railroads, and shall have the same rights and privileges granted to corporations owning and operating lines of railroad."

Appellee's position is that the building of a railroad by a mineowner for the exclusive use of his own mine is a purely private enterprise; that the operator does not owe or discharge any public duty; and that, if he be allowed to exercise the right of eminent domain, it would be to let one person, under that power which lays alone in the sovereign, take one man's property to another man's private use. We do not find it necessary to enter into a discussion of the power of the state to empower a private person to take property of another by condemnation for private use. The statute in question in this case is a part of the chapter on railroads. It provides for the building of a railroad, not more than three miles long, for a particular purpose; that is, to a mine or quarry. The statute expressly brings such roads, so far as the conditions may apply, within the general laws regulating all railroads. We understand this to mean that these short roads, like trunk lines and other railroads, are subject to the laws affecting common carriers, and that they may be required to serve the public as common carriers. Indeed, such construction seems to have been implied in the opinion in Bowling Green Stone Co. v. Oman, 115 Ky. 369, 73 S. W. 1038. It may be that the owner of the track may not have cars and engines with which to serve the public; but if an

arrangement be made with another carrier to supply
the necessary equipment, and it is done, we perceive
no reason why every interest of the public in the
matter is not satisfied.  We held in L. & N. R. R. Co.
v. P. & Ky. Coal Co., 111 Ky. 960, 64 S. W. 969, 55
L. R. A. 601, 98 Am. St. Rep. 447, that in using 'such
spur tracks the operating railroad company was
bound to serve all the public alike, and could not by
contract limit its services to one customer upon the
spur.  This construction rescues the section from the
vice imputed to it by appellants.  The Legislature
must have intended by the language of the section
bringing these short lines under the general law affect-
ing railroads as carriers to make them servants of
the public.  A coal mine generally requires a great
many people to operate it.  Its product, while shipped
out by one consignor, is destined for a considerable
number of consignees.  The road serves not only the
miners in hauling in their supplies and the like, but
the coal shipping public in hauling out the coal.  The
fact that the circumstances are such that but one
commercial commodity is shipped over the road makes
it none the less a common carrier serving the public
in that capacity.  Being a quasi public corporation,
it was competent for the Legislature to empower it
to exercise the right of eminent domain.  Chesapeake
Stone Co. v. Moreland, 104 S. W. 762, 31 Ky. Law
Rep. 1075; Lewis, Em. Domain, section 170.

Appellants' contention that appellee did not need
the strips of land sought to be condemned is based
upon the fact that it was possible for appellee to have
constructed, as it did, its tracks entirely upon its own
land.  While it is true that it is an engineering pos-
sibility to build the road on appellant's own land,

yet the feat would be so costly and difficult to execute and maintain that it would be impracticable. When the Legislature enacted the section of the statute which is quoted above, that was a legislative declaration of the existence of the public necessity for building such roads; and, when the charter was granted to the persons in the manner and for the purpose, as allowed by the statutes of the state, that was the equivalent of the legislative declaration that the necessity existed for the building of the particular railroad for the public accommodation. The location of the line of the road is allowed by law to be done by the promoters of the road. The route which they select, when done in the manner pointed out by the statute, raises a presumption that it is a necessary route. Whatever is taken must be paid for. The builders may not capriciously or wantonly locate the line so as to injure another without any over-balancing public benefit, although they may be willing to pay for the part taken. An excessive taking, a taking more than is required, or taking what is not needed would be beyond the scope of the delegated power, and would be denied. Mills, Em. Domain, section 23. But necessity as used in these statutes does not mean absolute necessity, but should be held to cover what is appropriate and convenient to carry into effect the right conferred. Detroit Park, etc., Com'rs v. Moesta, 91 Mich. 149, 51 N. W. 903; New Jersey R., etc., Co. v. Hancock, 35 N. J. Law, 537. Thus it has been held that a legal necessity exists when the land is needed by the railroad company to increase the safety of its roadbed at a certain point (Bigelow v. Draper, 6 N. D. 152, 69 N. W. 570), or where it is needed to avoid the ascent or descent of a hill, and so as to avoid a

grade crossing (Aurora, etc., Ry. Co. v. Harvey, 178 Ill. 477, 53 N. E. 331). The evidence in this case at bar shows that the temporary track, built by appellee on its own land, is at a grade, and on such curves as to make the track dangerous to operatives of the trains and the track unsafe; but that, by removing the track at these points to the pieces sought to be condemned, it would eliminate these dangers. This constituted, we think, a necessity for the taking of the land under appropriate condemnation proceedings.

One of the strips sought to be condemned lies just beyond appellee's coal chute or tipples. A few yards after passing the tipple, the hill sets in abruptly, so there is not room to set the necessary empty cars, or to make a track to run the locomotives around the tipple, without tunneling into the mountain. The cost and labor to do that make it impracticable; but by turning out on appellant's land at that point enough ground can be had to accommodate these necessary tracks. We think this was also a necessity for the road. It is as necessary to have all requisite siding and terminal facilities as it is the main line of the road. The purpose for the building of the road was to carry away the coal from these mines. That purpose would be interfered with if not defeated by denying the road room enough to switch and store enough cars to load the coal in as it was mined, and preparatory to shipping it away. In Saginaw R., etc., Co. v. Bordner, 108 Mich. 236, 66 N. W. 62, it was held the necessity existed justifying the condemnation where the railway company needed the additional ground to enable it to more conveniently get out gravel from certain gravel pits which it was operating. We do not mean to be understood as saying that mere

convenience may constitute a necessity for changing a roadbed, and condemning land for the purpose. It should be a convenience which substantially advances the public interest and welfare by making the road safer, or better. That it is possible to maintain the road in its old position is not enough to defeat the right of condemnation. It should be feasible as well. An excessive cost of construction or maintenance, or dangers to operatives, travelers, or freight because of grades, curves, or the like, tend to show that the old or other different route may be impracticable. To limit one to an impracticable way is almost equivalent to denying him any way. The plots proposed to be condemned in this proceeding are of but little value to appellants. They are not needed or used by appellants for any purpose. It is suggested that as appellee's road is but a few yards from appellants', and on a lower grade, the building of appellee's road will tend to weaken the support of appellants' roadbed, which is on the hillside. But, if that be so, appellee will have to build a retaining wall for the upper road; for appellee must construct and operate its road prudently, and with regard to the rights of its neighbor.

We perceive no error in the case, and the judgment is affirmed.