## Petroleum Exploration v. Hensley et al.

August 6, 1948.

Allen Prewitt and Roy W. House for appellant,

John D. White for appellees.

OPINION OF THE COURT BY JUDGE LATIMER—Reversing.

This action was instituted by appellant, Petroleum Exploration, a corporation, as plaintiff below to condemn an easement over and through the land of appellees for the purpose of laying a pipeline to be used to transmit gas for public use.

Appellant owns and operates gas wells near Oneida in Clay County; and owns and operates transmission lines running from there to Lexington and Somerset, through which it distributes gas for public use at Lexington, Richmond, Irvine, Manchester, London and Somerset. Appellant owns and operates a number of gas wells in Knox County and is now in the process of further development there. For the purpose of providing more gas and also to overcome the gas shortages which have occurred during the winters past, it is now con-

structing about 34 miles of new pipeline from the Knox County field to the Clay County terminus near Oneida. Appellant selected and proposed what it deemed the most feasible and practicable route for the construction of this line through the intervening mountainous country. The route as proposed and selected traverses the land of appellee, William Henry Hensley, for a distance of about 882 feet and passes through a small bottom which is bounded on the West by Goose Creek and on the East by a hillside and high steep cliff. Between the defendants' land and the abrupt cliff on the East is a hillside, composed of rocks, boulders, and earth, rising at an angle of about 45 degrees with a series of irregular benches or ledges on the face of the cliff. Both the hillside and the cliff are owned by the Hardwood Sales Company. Efforts were made to agree with appellees, Mr. and Mrs. Hensley, for the right-of-way over this land. The Hensleys demanded either free gas indefinitely or an annual money rental of $25 per year for the right to traverse their land. This appellant thought to be a prohibitive annual carrying charge. After having exhausted every effort to agree, this action was instituted.

Commissioners were appointed who went upon the land and assessed the damages at $175. Appellees, as defendants below, filed their exceptions which challenged the necessity for taking an easement in the land and also the amount of the award.

It will be noted, however, that an amended petition was filed to conform to a new Act of the 1948 General Assembly known as Senate Bill 193.

The County Court then without the intervention of jury tried the issue of necessity and after viewing the property, held it was not necessary for plaintiff to cross the defendant's property, and dismissed the petition.

Pursuant to Section 7, subsection 2 of Senate Bill 193, the Clay Circuit Court retried the matter of necessity and affirmed the County Court's ruling. From that judgment this appeal is prosecuted.

Appellees take the position that appellant can and should construct its pipeline on the hillside rather than through this bottom land. The only testimony introduced was that of Paul E. Landrus, Superintendent of

gas production and transportation of pipeline for the Petroleum Exploration, who testified for appellant, and that of William Hensley, who testified for himself. Mr. Hensley, according to his testimony, is without training or experience either as an engineer or in locating and laying of pipelines. He insisted that it would be feasible and practicable for appellant to lay its line along the ledges on the hillside although it might be a bit more inconvenient so to do. He insists it is not at all necessary to go through his land and that the only reason for so doing is that it should be easier and more convenient.

According to the testimony of appellant, in laying lines it is necessary to stay either on top of the ridges or in the bottoms as much as possible and in going from one to the other it is necessary to go straight up or down the hill as perpendicularly as possible; and that if a line is built along the hillside the hazards of slips and slides are incurred, which frequently result in a breaking of the line with consequent dangers.

Appellees quite frankly admit that the construction of gas pipelines in themselves is a necessity in order to serve the public with this service, and that because thereof the Legislature grants general condemnation rights for the benefit of the public. Tracy v. Elizabethtown L. & B. S. R. Co., 80 Ky. 259; Tracy v. Elizabethtown, L. & B. S. R. Co., 85 Ky. 270, 3 S. W. 168; Spahn v. Stewart, 268 Ky. 97, 103 S. W. 2d 651.

But, it is insisted that the question of necessity as to a particular location, or property, that is, whose land such pipelines shall cross or go over and through, lies clearly within the purview of the court, and is a matter entirely for judicial determination. Appellees admit that the rule of absolute necessity cannot be set up and relied upon but insist that it is neither a matter of convenience. There must appear a reasonable necessity therefor. Davidson v. Commonwealth ex rel. State Highway Comm., 249 Ky. 568, 61 S. W. 2d 34.

Appellant quite as frankly admits that it would be physically possible as an engineering feat to construct a pipeline anywhere, but insist that the rule of "mere physical possibility" would be putting it in the category of absolute necessity. Certainly appellant cannot capriciously or wantonly locate its line so as to injure appel-

lees, nor would it be enough for appellant to say that as a mere convenience it desires to go through the land of appellees. The question is: In the light of the facts here, is the course as desired a practical necessity? The evidence shows that it is not practicable to lay a gas line alongside a hill because of the danger of slips and slides, with their accompanying hazards. Common judgment supports this.

The argument is advanced that to build this pipeline over the land of the Hardwood Sales Company would result in less damage to this hillside land than to the land of appellees. Comparative damages or convenience to various land owners is not the test. Procedure governed by such consideration would only result in extreme difficulty, confusion and incalculable delays. In Greasy Creek Mineral Co. v. Ely Jellico Coal Co., 132 Ky. 692, 116 S. W. 1189, this question of necessity was considered. We said:

"The location of the line of the road is allowed by law to be done by the promotors of the road. The route which they select, when done in the manner pointed out by the statute, raises a presumption that it is a necessary route. Whatever is taken must be paid for. The builders may not capriciously or wantonly locate the line so as to injure another without any overbalancing public benefit, although they may be willing to pay for the part taken. An excessive taking, a taking more than is required, or taking what is not needed would be beyond the scope of the delegated power, and would be denied. Mills, Em. Domain, section 23. But necessity as used in these statutes does not mean absolute necessity, but should be held to cover what is appropriate and convenient to carry into effect the right conferred. Detroit Park, etc., Com'rs v. Moesta, 91 Mich. 149, 51 N. W. 903; New Jersey R., etc., Co. v. Hancock, 35 N. J. L. 537. Thus it has been held that a legal necessity exists when the land is needed by the railroad company to increase the safety of its roadbed at a certain point (Bigelow v. Draper, 6 N. D. 152, 69 N. W. 570), or where it is needed to avoid the ascent or descent of a hill, and so as to avoid a grade crossing (Aurora, etc., Ry. Co. v. Harvey, 178 Ill. 477, 53 N. E. 331). * * * In Saginaw R., etc., Co. v. Bordner, 108 Mich., 236, 66 N. W. 62, it was held the necessity existed justifying the condemnation where

the railway company needed the additional ground to enable it to more conveniently get out gravel from certain gravel pits which it was operating. We do not mean to be understood as saying that mere convenience may constitute a necessity for changing a roadbed, and condemning land for the purpose. It should be a convenience which substantially advances the public interest and welfare by making the road safer, or better. That it is possible to maintain the road in its old position is not enough to defeat the right of condemnation. It should be feasible as well. An excessive cost of construction or maintenance, or dangers to operatives, travelers, or freight because of grades, curves, or the like, tend to show that the old or other different route may be impracticable. To limit one to an impracticable way is almost equivalent to denying him any way.''

We have here the admitted public necessity for the pipeline. Appellant has no property of its own through which it may lay its pipeline. Consequently, the pipeline must be laid through the property of someone.

We are convinced that, under the facts above and the rule of law applicable as laid down by this Court relative to necessity, there exists here a practicable and reasonable necessity for an easement through the land of appellees.

Wherefore, the judgment is reversed with directions for further proceedings in the Clay Circuit Court in pursuance of Section 7 of Senate Bill 193 enacted by the General Assembly at its regular session in 1948.