2002 WY 148

Jack M. CONNER and Nancy L. Conner,
Appellants (Defendants),

v.

The BOARD OF COUNTY COMMIS-
SIONERS, NATRONA COUNTY,
Wyoming, Appellee (Plaintiff).

No. 01–179.

Supreme Court of Wyoming.

Oct. 2, 2002.

Jack M. Conner and Nancy L. Conner, pro se, Evansville, Wyoming, Representing Appellants.

* Chief Justice at time of expedited conference.

1. The Conners were represented by counsel in

Eric A. Easton, Natrona County Attorney; and William W. Harden, Deputy County Attorney, Representing Appellee.

Before HILL, C.J., and GOLDEN, LEHMAN,* KITE, and VOIGT, JJ.

KITE, Justice.

[¶ 1] Jack M. Conner and Nancy L. Conner (the Conners) owned twenty acres of land near Alcova Reservoir burdened by an easement to Natrona County for a water system for the reservoir's recreational facilities. The parties discovered in 1997 that portions of the system were outside the easement boundaries. After unsuccessful negotiations, the Board of County Commissioners of Natrona County (the board) filed an eminent domain action. The district court ordered condemnation of 2.21 acres in fee simple. A jury trial was held to determine the compensation the Conners should receive. The district court granted a judgment as a matter of law for $3,827.72.[1] We affirm.

## ISSUES

[¶ 2] The Conners present the following issues for our review:

### ISSUE I

Whether the plaintiff has the authority to file eminent domain on behalf of the federal government.

### ISSUE II

Whether the district court failed to follow Rule 71.1(e)(1) of [the] Wyoming Rules of Civil Procedure.

### ISSUE III

Whether the district court erred in finding that the plaintiffs met all statutory requirements in filing an eminent domain action.

the district court and appear *pro se* on appeal.

## ISSUE IV

Whether the district court's decision was excessive and placed an unnecessary burden on the defendants.

## ISSUE V

Whether the district court erred in dismissing the defendants['] inverse condemnation suit.

## ISSUE VI

Whether the district court erred in not awarding legal fees and costs to defendants under § 1–26–506 and § 1–26–508.

## ISSUE VII

Whether the district court acted properly in dismissing the jury and making a judgment as a matter of law.

The board phrases the issues as:

**Issue I—**

Whether the District Court properly found that Natrona County complied with the statutory requirements for an Eminent Domain Action, pursuant to W.S. § 1–26–504 and Wyoming Rules of Civil Procedure, Rule 71.1.

**Issue II—**

Whether the District Court's granting Plaintiff's Rule 50 Motion taking the case from the jury was proper due to the Appellant[s'] failure to provide competent evidence on the value of the taking and for failure of proof for other damages.

## FACTS

[¶ 3] The Conners' land was bordered on the south by federal lands controlled by the Bureau of Land Management and on the east by federal lands controlled by the Bureau of Reclamation. Since the mid–1950s, Natrona County has leased Bureau of Reclamation lands pursuant to consecutive Memorandums of Understanding (MOUs) intended to provide for the development of Alcova Reservoir as a recreational area as well as for other activities.[2]

[¶ 4] In 1959, Miles Land and Livestock Company, the Conners' predecessor in interest,[3] granted Natrona County a right of way easement, which provided in part:

Easement to Natrona County Parks and Recreation for Water Storage Tank and Water Line to Alcova Trailer Park, Situated in the NW¼ NE¼, Sec. 33, T30N, R83W, 6th Principal Meridian, Natrona County, Wyoming; . . .

The Board of Trustees of Natrona County Parks and Pleasure Grounds does hereby grant unto Miles Land and Livestock Company the right to have water from [the] above mentioned water storage tank or pump for the purposes of stock water and/or if in the future, Miles Land and Livestock Company should develop lots, they will have water for two lots from said storage tank from a ¾ inch line.

Grantor also grants the right of ingress and egress to and from the said land for any and all purposes necessary for the public.

Natrona County constructed a water supply and distribution system comprised of a well, storage tank, supply line to the storage tank, and distribution line from the storage tank to the recreational facilities. Operation of the system began in 1959 supplying water on a seasonal basis to a marina, ski club, boat club, 155 leased trailer sites, 99 cabins, and five general public campgrounds.[4]

[¶ 5] In 1997, after the Conners acquired ownership of the land burdened by the easement, the parties learned the well and water

2. Negotiations were initially conducted between the Bureau of Reclamation and the Wyoming Parks Commission. Natrona County was involved as a licensee of the Wyoming Parks Commission. By the 1966 MOU, Natrona County was a direct party to the agreement.

3. Miles Land and Livestock Company owned the property at the time the easement was originally granted and recorded. The property was sold to Keith V. Asbell, W.R. Asbell, and Henry A. Hitch, Jr. in 1975 and then to Mr. Conner and Garry A. Frank in 1996. In October of 1997, Mr. Conner and Mr. Frank transferred the property to the Conners.

4. Natrona County is contractually obligated to have the water system operational from April 15th through October 15th, and the water system is shut down in the off season.

lines from the well to the storage tank located on the Conners' property were outside the boundaries of the 1959 easement. Negotiations ensued between the parties but were unsuccessful.[5] On April 7, 1998, the board passed a resolution authorizing the filing of eminent domain proceedings. The following day, the board filed a complaint and a motion for immediate entry in the district court. The Conners were served on April 9, 1998, with an order scheduling a show cause hearing for April 14, 1998, to determine whether the board should be granted immediate access to the Conners' property. The Conners objected contending W.R.C.P. 71.1(e)(1) precludes a hearing "sooner than 15 days after service of the order to show cause." The hearing went forward despite the objection, and the district court granted the board's motion for immediate entry. The Conners answered and counterclaimed for inverse condemnation.

[¶ 6] A condemnation bench trial commenced June 18, 1999, and continued for a second day on September 9, 1999. In its October 28, 1999, "Order for Hearing on Complaint for Condemnation," the district court held the board had complied with both the procedural requirements of W.R.C.P. 71.1 and the substantive requirements of the Wyoming Eminent Domain Act and had met its burden of proof. The district court ordered a portion of the Conners' property condemned consistent with the description contained in the board's Exhibit Z providing .9 acre for the roadway, .01 acre for the pipeline, and an additional 1.3 acres where the well was located.

[¶ 7] After the condemnation trial, the parties participated in nonbinding mediation on the compensation the Conners should receive for the 2.21 acres condemned by the court's order and any other damage to the remainder of their parcel that might be caused by the taking. An informal damages hearing was held pursuant to W.R.C.P. 71.1(e)(2)(C) and Wyo. Stat. Ann. §§ 1–26–601 through 1–26–604 (LexisNexis 2001). The district court determined the Conners

should be paid $5,816.67. The Conners were not satisfied and filed a formal demand for a jury trial. The jury trial commenced in April 2001. The Conners called the board's appraiser, James E. Wren, who provided his conclusion the damage to the property was $3,827.72. They also called Mrs. Conner and their own witness Neil Hilston, neither of whom was able to provide an opinion concerning the diminution in value caused by the easement. The district court found the testimony of the board's appraiser to be the only probative evidence received. At the close of the Conners' case, the board moved for judgment as a matter of law pursuant to W.R.C.P. 50(a), contending there was no legally sufficient evidentiary basis for a reasonable jury to find in favor of the Conners on any issue. The board also moved to dismiss the Conners' inverse condemnation counterclaim for lack of proof. The district court granted both motions on the basis of W.R.C.P. 50(a) because the only possible verdict that could be supported by the evidence was a judgment for $3,827.72. This appeal followed.

## STANDARD OF REVIEW

 [¶ 8] Eminent domain proceedings are authorized by constitutional and statutory provisions and governed by W.R.C.P. 71.1. The district court determines all issues arising on the complaint for condemnation including notice, the plaintiff's right to make the appropriation, plaintiff's inability to agree with the owner, the necessity for the appropriation, and the regularity of the proceedings. W.R.C.P. 71.1(e)(2)(A). Only the issue of compensation may be tried before a jury. W.R.C.P. 71.1(j).

When we review the district court's determination of issues required by Rule 71.1(e)(2), "we uphold the judgment if there is evidence to support it, and in doing so we look only to the evidence submitted by the prevailing party and give to it every favorable inference which may

---

5. Proposals and counterproposals were exchanged including in part the Conners' requests that Natrona County install equipment to provide a year round water source to the property, clean

up the trailer court, install electric fences, and pay various sums of money for installing a water line to a work shop and grading a road without permission.

be drawn therefrom, without considering any contrary evidence." *Town of Wheatland v. Bellis Farms, Inc.*, 806 P.2d 281, 284 (Wyo.1991). Where the district court's ultimate conclusions decide questions of law, we afford no deference to its decision. *See Coronado Oil Co. v. Grieves*, 603 P.2d 406, 410 (Wyo.1979); *see also Homesite Co. v. Board of County Comm'rs of Laramie*, 69 Wyo. 236, 240 P.2d 885, 889 (1952).

*Wyoming Resources Corporation v. T–Chair Land Company*, 2002 WY 104, ¶¶ 7–8, 49 P.3d 999, ¶¶ 7–8 (Wyo.2002). This court reviews *de novo* the grant of a motion for judgment as a matter of law, and we accord no deference to the district court's decision. *Cargill, Incorporated v. Mountain Cement Company*, 891 P.2d 57, 62 (Wyo.1995).

The test to be applied is whether the evidence is such that, without weighing the credibility of the witnesses or otherwise considering the weight of the evidence, there can be but one conclusion as to the verdict that reasonable persons could have reached. We view the evidence in the light most favorable to the nonmoving party, and give that party the benefit of all reasonable inferences that may be drawn from the evidence. When the facts permit the drawing of more than one inference, it is for the jury to choose which will be utilized. Since a judgment as a matter of law deprives the party opposing the motion of a determination of the facts by a jury, it should be cautiously and sparingly granted.

*John Q. Hammons Inc. v. Poletis*, 954 P.2d 1353, 1356 (Wyo.1998) (citations omitted); *see also Rudy v. Bossard*, 997 P.2d 480, 485 (Wyo.2000).

## DISCUSSION

### A. Record Designation

[¶ 9] In footnote two of its brief, the board objected to this court considering transcripts not previously designated by the Conners to be included in the record on appeal. The board specifically objected to consideration of the June 18, 1999, condemnation bench trial transcript. W.R.A.P. 3.05 requires parties, simultaneously with the filing of their appellate briefs, to designate those portions of the district court record upon which they have relied. This court's docket reflects the Conners' brief was filed on January 29, 2002, without a designation of record. The Conners had a second opportunity to file a designation of record with a reply brief, but they did not do so.

[¶ 10] On April 3, 2002, the Conners filed a designation request with the district court asking that all available transcripts in the file be transmitted to the Supreme Court. On the same day, the board filed an objection in the district court to the transcript of the June 18, 1999, proceedings being included because the Conners did not designate it as a portion of the record on appeal. The caption of the board's pleading read "IN THE SUPREME COURT[,] STATE OF WYOMING" and recited both the district court and the Supreme Court docket numbers. It appears the district court clerk subsequently transmitted all available transcripts to this court, including the transcript for the June 18, 1999, condemnation trial. The board filed no motion in this court to strike the transcript.

[¶ 11] W.R.A.P. 3.04 requires all questions as to the form and content of the record, except differences which may arise as to whether the record discloses what occurred in the trial court, to be presented to the appellate court by motion. The board did not follow this procedure because it filed its motion objecting to the transcript with only the district court. Though the caption referred to the Supreme Court, the motion was never filed with the clerk of this court.

Failure to comply with our rules of appellate procedure is ground for "such action as the appellate court deems appropriate, including but not limited to: refusal to consider the offending party's contentions; assessment of costs; dismissal; and affirmance." W.R.A.P. 1.03. We ... expect litigants who choose to proceed *pro se* to comply with the Wyoming appellate rules just as we expect trained lawyers to comply with those rules.

*Basolo v. Gose*, 994 P.2d 968, 969 (Wyo.2000).

[¶ 12] Both parties failed to fully comply with our rules of appellate procedure

with regard to including the transcript in the appellate record. It would be unreasonable to grant the board's objection and disregard the transcript when the board itself failed to properly raise the issue. Therefore, we deem it appropriate to disregard the mutual errors and consider the certified record as submitted.

## B. Federal Government Property Ownership

[¶ 13] For the first time on appeal, the Conners assert the board's exercise of its eminent domain power is defective because the water system benefits federally owned lands, the MOUs require certain federal authorizations which were not obtained, and the state eminent domain statutes do not provide the federal government the power to condemn property. They did not raise this issue in the district court. Further, they have not provided reasonable argument or authority here in support of their assertion. We will not consider issues presented for the first time on appeal or unsupported by cogent argument and pertinent authority. *Metz Beverage Company v. Wyoming Beverages, Inc.*, 2002 WY 21, ¶ 35, 39 P.3d 1051, ¶ 35 (Wyo.2002); *Shumway v. Worthey*, 2001 WY 130, ¶ 16, 37 P.3d 361, ¶ 16 (Wyo.2001); *Statezny v. State*, 2001 WY 22, ¶ 11, 18 P.3d 641, ¶ 11 (Wyo.2001); *Oatts v. Jorgenson*, 821 P.2d 108, 111 (Wyo.1991).

## C. Notice of W.R.C.P. 71.1(e)(1) Hearing for Immediate Entry

[¶ 14] W.R.C.P. 71.1(e)(1) directs that a hearing to determine whether an immediate need exists for the condemnor to enter the condemnees' property shall be held not sooner than fifteen days from the date the hearing order is served on the condemnees. No one disputes the Conners were served the show cause hearing order on April 9, 1998, and the hearing was held on April 14, 1998, only five days later in violation of the rule. We cannot and do not condone such violation of the rules which are intended to provide an opportunity to all parties to fully participate in the proceedings. However, in this instance, although the breach is undenia-

ble, we cannot discern what harm the Conners suffered from the error.

[¶ 15] The Conners maintain the district court's decision to hold the hearing over their objection was an "exertion of arbitrary power." We cannot confirm whether the issue was even raised at the hearing because there is no transcript in the record and the order following the hearing does not mention any such objection. Conceivably, the Conners could have been harmed by not being able to properly conduct an investigation, contact witnesses, or otherwise prepare for the hearing. However, they have not addressed the nature of any harm they may have incurred, and we cannot rely upon speculation to determine harm occurred.

[¶ 16] For an error to warrant reversal, it must be prejudicial and affect an appellant's substantial rights. *ABC Builders, Inc. v. Phillips*, 632 P.2d 925, 934 (Wyo.1981). The Conners' ownership interest in their property is unquestionably a substantial right.

The Fourteenth Amendment to the Constitution of the United States, binding upon the states, provides "nor shall any State deprive any person of life, liberty, or property, without due process of law." In Article 1, § 6 of the Constitution of the State of Wyoming, a parallel provision appears, "[n]o person shall be deprived of life, liberty or property without due process of law." ... " 'It is basic that, before a property interest can be terminated, except in emergency situations, due process must be afforded to litigants in the form of notice and a meaningful opportunity to be heard.' " *Sandstrom v. Sandstrom*, 880 P.2d 103, 106 (Wyo.1994) (quoting *Lawrence–Allison and Associates West, Inc. v. Archer*, 767 P.2d 989, 997 (Wyo.1989)). ...

*Loghry v. Loghry*, 920 P.2d 664, 667 (Wyo. 1996); *see also Murray v. Murray*, 894 P.2d 607, 608 (Wyo.1995).

[¶ 17] Where there is no injury to the appellant, this court will overlook errors. *ABC Builders, Inc.*, 632 P.2d at 935. For an error to be harmful, there must be a reasonable possibility that, in the absence of the error, the verdict might have been more favorable to a defendant. *Id.*

No error in either the admission or the exclusion of evidence and no error or defect in any ruling or order or in anything done or omitted by the court or by any of the parties is ground for granting a new trial or for setting aside a verdict or for vacating, modifying or otherwise disturbing a judgment or order, unless refusal to take such action appears to the court inconsistent with substantial justice. The court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties.

W.R.C.P. 61. W.R.A.P. 9.04 provides: "Any error, defect, irregularity or variance which does not affect substantial rights shall be disregarded by the reviewing court."

[¶ 18] Though a substantial right was at issue, the district court's order merely maintained the status quo as it had existed since 1959 pending resolution of the eminent domain proceedings. It is reasonable to infer some urgency existed because Natrona County was contractually obligated to provide water to the Alcova Reservoir recreational facilities when the new season began on April 15th. That water was necessary for the members of the general public who would be using those facilities. We cannot verify what occurred in the district court because the Conners did not designate the hearing transcript. Consequently, no evidence exists in the record demonstrating harm occurred or the district court acted unreasonably. Therefore, we must assume the district court acted in a reasonable manner and this error was harmless. *Cottonwood Valley Ranch, Inc. v. Roberts*, 874 P.2d 897, 899 (Wyo.1994).

### D. Attorney Fees for Violation of Immediate Entry Order

[¶ 19] Following the hearing, the district court issued an order permitting the board to enter the Conners' property to operate and maintain the water system. However, the order required the board to give the Conners notice prior to going onto the property. The Conners subsequently filed a motion for an order to show cause regarding an alleged violation of that requirement, and the court held the board in contempt. Neither the Conners' motion nor the hearing transcript was designated, and neither is in the record. The Conners argue they should be entitled to attorney fees pursuant to Wyo. Stat. Ann. §§ 1–26–506 and 1–26–508 (LexisNexis 2001) because the board failed to comply with this order.[6] However, the district

---

6. Section 1–26–506 provides:

(a) A condemnor and its agents and employees may enter upon real property and make surveys, examinations, photographs, tests, soundings, borings and samplings, or engage in other activities for the purpose of appraising the property or determining whether it is suitable and within the power of the condemnor to condemn if the entry is:

(i) Preceded by prior notice to and written authorization from the owner or his agent;

(ii) Undertaken during reasonable hours, normally during daylight;

(iii) Accomplished peaceably and without inflicting substantial injury.

(b) The entry and activities authorized by this section do not constitute a trespass.

(c) The condemnor is liable under W.S. 1–26–508 for damages resulting from activities authorized by this section.

Section 1–26–508 provides:

(a) A condemnor is liable for physical injury to, and for substantial interference with possession or use of, property caused by his entry and activities upon the property. This liability may be enforced in a civil action against the condemnor or by application to the court as provided by subsection (c) of this section unless voluntarily paid by the condemnor.

(b) In an action or other proceeding for recovery of damages under this section, the prevailing party shall be allowed his costs. In addition, the court shall award the condemnee his litigation expenses incurred in any proceeding under W.S. 1–26–507 if it finds that the condemnor:

(i) Entered the property unlawfully;

(ii) Entered upon the property lawfully but thereafter engaged in activities upon the property which caused significant damage to the property not reasonably necessary to the purposes of the entry; or

(iii) Failed substantially to comply with an order made under W.S. 1–26–507.

(c) If funds are on deposit under W.S. 1–26–507, the owner or other person entitled to damages under subsection (a) of this section may apply to the court for an award of the amount he is entitled to recover. The court shall determine the amount and award it to the person entitled thereto and direct that its payment be made out of the money on deposit. If the amount on deposit is insufficient to pay the full amount, the court shall enter judgment against the condemnor for the unpaid portion.

court made no findings that the board had violated the provisions of § 1–26–508(b) making an award of litigation costs mandatory and expressly declined to award the Conners' fees and costs "at this time."

> In considering the claim for attorney fees, the district court appropriately would be guided by the propositions that the statutory provision should be given a liberal interpretation to effectuate its salutary purposes and a prevailing plaintiff ordinarily should be awarded compensating attorney fees unless special circumstances would render the award unjust. *Bueno v. CF & I Steel Corporation,* 773 P.2d 937 (Wyo.1989); *State ex rel. Scholl v. Anselmi,* 640 P.2d 746 (Wyo.1982), *appeal dismissed, cert. denied* 459 U.S. 805, 103 S.Ct. 28, 74 L.Ed.2d 43 (1982); [*Board of Trustees of Weston County School District No. 1, Weston County v.*] *Holso,* 584 P.2d 1009 [ (Wyo.1978) ]; Annotation, *Construction and Application of Civil Rights Attorney's Fees Awards Act of 1976 (Amending 42 USCS [A] § 1988 42USCAS1988USCA0020LQ), Providing That Court May Allow Prevailing Party, Other Than United States, Reasonable Attorney's Fee In Certain Civil Rights Actions,* 43 A.L.R.Fed. 243 (1979). In determining the reasonableness of that award, the district court will be guided by our Wyoming precedents. *See, e.g., Delgado v. Delgado,* 773 P.2d 446 (Wyo.1989).

*Town of Upton v. Whisler,* 824 P.2d 545, 552 (Wyo.1992).

[¶ 20] The Conners presume that, because the board was held in contempt, it should have been ordered to pay their fees and costs under the statute, and they claim the district court was "biased." These arguments present only bare assertions without evidentiary or legal support. Further, we have no means to review the district court proceedings and must assume the decision was in accord with the law. *Cottonwood Valley Ranch, Inc.,* 874 P.2d at 899.

**E. Statutory Requirements of Eminent Domain**

[¶ 21] The Conners maintain the district court erred in finding the board met all the requirements of the eminent domain statutes:

> (a) Except as otherwise provided by law, the power of eminent domain may be exercised to acquire property for a proposed use only if all of the following are established:
>
> (i) The public interest and necessity require the project or the use of eminent domain is authorized by the Wyoming Constitution;
>
> (ii) The project is planned or located in the manner that will be most compatible with the greatest public good and the least private injury; and
>
> (iii) The property sought to be acquired is necessary for the project.

Wyo. Stat. Ann. § 1–26–504(a) (LexisNexis 2001). In reviewing findings, we have said:

> When a condemnor seeks to establish the requirement of necessity in an eminent domain proceeding, it need only show a reasonable necessity for the project. As explained by one court, the term "necessity," when used in the context of an eminent domain proceeding, means "reasonably convenient or useful to the public." *City of Dayton v. Keys,* 21 Ohio Misc. 105, 252 N.E.2d 655, 659 (1969). A showing that the project will increase public safety is sufficient. *See Greasy Creek Mineral Company v. Ely Jellico Coal Company,* 132 Ky. 692, 116 S.W. 1189 (1909).

*Board of County Commissioners of Johnson County v. Atter,* 734 P.2d 549, 553 (Wyo. 1987). And further:

> To comply with W.S. 1–26–504(a)(ii), the [board] needs to present evidence that it has planned or located the project in a manner most compatible with the greatest public good and the least private injury. The district court then reviews the evidence and decides whether the [board] has met its burden. Once W.S. 1–26–504(a)(ii) has been complied with and the landowners still wish to contest the action, the burden shifts to them to show that the condemnor acted in bad faith or abused its discretion as to that particular determination.

*Town of Wheatland v. Bellis Farms, Inc.,* 806 P.2d 281, 283 (Wyo.1991) (footnotes omitted). Before filing an eminent domain complaint, a condemnor must make reasonable, diligent, and good faith efforts to negotiate with the condemnee. Wyo. Stat. Ann. § 1–26–509 (LexisNexis 2001). Efforts made in compliance with the statutes constitute prima facie evidence of the condemnor's good faith. Wyo. Stat. Ann. § 1–26–510 (LexisNexis 2001).

■ [¶ 22] After a two-day trial,[7] the district court announced detailed findings in open court on each of the procedural requirements of W.R.C.P. 71.1 and the substantive requirements of the eminent domain statutes including Wyo. Stat. Ann. §§ 1–26–504, 1–26–509, and 1–26–512 (LexisNexis 2001).[8] The findings included the project was in the public interest and necessity because water has special uses and needs wherever people are located; the water benefited many uses in the Alcova Reservoir area accessed by both members of the general public and private individuals; though there might be ways to relocate the water system, at that time its use in place was compatible with the greatest public good; though the board had argued condemnation of the entire twenty-acre parcel would eliminate future disputes, the least private injury would be incurred through condemnation of only the 2.21 acres affected by the existing system and described in the board's Exhibit Z; and, because the board met its burden of proof, the burden shifted to the Conners to show the board's bad faith or abuse of discretion. Although the parties were unable to agree, the court found the board complied with the negotiation requirements of § 1–26–509 through discussions, meetings, proposals, and counterproposals and no bad faith or abuse of discretion was shown.[9]

[¶ 23] Our review of the transcripts and exhibits confirms the district court fairly and accurately considered the evidence and issued findings consistent with that evidence addressing all the requirements of the eminent domain statutes. This decision did not unnecessarily impact the Conners because the district court determined a fee simple grant of only 2.21 acres was sufficient to meet the governmental needs. Although the Conners take issue with those findings, the district court is the fact-finder assigned with the task of resolving the conflicts in the evidence. *Leavell v. Linn,* 884 P.2d 1364, 1368 (Wyo.1994).

> [W]e cannot retry this case on appeal. Deference must be given to the opportunity of the trial court to judge the credibility of the witnesses, and a reviewing court will not set aside the court's findings merely because it might have reached a different result. The trial judge is in the best position to assess the credibility of witnesses and weigh their testimony, and, thus, this Court accords considerable deference to the trial judge's findings.

*Drake v. McCulloh,* 2002 WY 50, ¶ 18, 43 P.3d 578, ¶ 18 (Wyo.2002). The findings were not clearly erroneous or against the great weight of the evidence; therefore, we will not disturb them.

7. Only a partial transcript of the September 9, 1999, proceedings was included in the record on appeal. The portion provided is an excerpt of the district court's oral ruling.

8. Section 1–26–512 provides:
 (a) A public entity may not commence a condemnation action until it has first adopted a written resolution in substantial conformity with this section, authorizing commencement and prosecution of the action. The authorization may be amended or rescinded at any time before or after commencement of the condemnation action but if rescinded the public entity shall pay the litigation expenses of the condemnee.
 (b) In addition to other requirements imposed by law, the condemnation authorization required by subsection (a) of this section shall include:
 (i) A general statement of the proposed public use for which the property is to be taken and a reference to the specific statute that authorizes the taking of the property by the condemnor;
 (ii) A description of the general location and extent of the property to be taken, with sufficient detail for reasonable identification; and
 (iii) A declaration that a taking of the described property is necessary and appropriate for the proposed public use.

9. These findings are also reflected in the written order in a more abbreviated form.

## F. W.R.C.P. 50(a) Motion

[¶ 24] The Conners contend the district court erred when, at the close of their case at the April 2001 damages trial, it dismissed their inverse condemnation claim, granted the board's W.R.C.P. 50(a) motion for judgment as a matter of law, and dismissed the jury. The purpose of this jury trial was to determine the amount of "just compensation" the Conners were entitled to receive because of the condemnation of 2.21 acres of their property. "[J]ust compensation equals the fair market value of all property rights lost or taken, measured by the difference between the fair market value of the property before the taking and of the remainder after the taking." *Mayland v. Flitner*, 2001 WY 69, ¶ 39, 28 P.3d 838, ¶ 39 (Wyo.2001). The "before and after test" at a minimum requires that the dispossessed landowner receive the fair market value of the acreage taken. The damages may also include any additional reduction of the remaining property's fair market value attributable to the nature of the taking.

[¶ 25] The burden of proof for condemnation damages is well established:

The landowners in eminent domain cases have the burden of proving the just compensation to which they are entitled. This is the general rule.

This is not an idle statement of a rule meant to be disregarded. The burden is placed on landowners because they have turned down the offer deemed fair by the condemnor and created the issue, even though raised somewhat differently than through the pleadings in the usual civil case. It would be of no use to even state the rule if not put into practice. It is designed for the use of the fact finder to aid in decision making in the face of a conflict of evidence which is usually the case in critical evidentiary areas in jury tried litigation.

*Energy Transportation Systems, Inc. v. Mackey*, 650 P.2d 1152, 1157 (Wyo.1982) (citations omitted). The Conners presented the testimony of Mrs. Conner, one of the property owners; Mr. Hilston, a realtor and appraiser; and Mr. Wren, the appraiser hired by the board. We have previously considered the weight and relevancy of an owner's testimony:

While an owner may testify to the value of his property, that does not make it competent. An owner is only qualified to express an opinion of value in a reasonable way and in accordance with the proper standards for determining fair market value; what it is worth to him is not a correct basis. If the owner's opinion is not within these rules, it has no probative value in a condemnation case.

*Id.* at 1156. We have likewise noted the trial court's broad discretion in permitting testimony regarding valuation. "Whether or not a witness has sufficient knowledge or special experience to testify as to his opinion on valuation is within the discretion of the trial court and will be disturbed on appeal only if clearly and prejudicially erroneous and then only in extreme cases." *Ely v. Kirk*, 707 P.2d 706, 712 (Wyo.1985).

[¶ 26] Our review of the hearing transcript shows Mrs. Conner provided vague, unsupported estimates as to the property's value. She had no particular knowledge or training that might qualify her opinion. She did not explain the time frames she used for showing comparable values. It was also unclear whether she was estimating the value of the condemned 2.21 acres or the remaining parcel. Mrs. Conner never testified as to the amount originally paid for the land. She did testify that each trailer lot on the adjacent property appraised at $7,000 and at least ten such lots could fit on the 1.3–acre condemned portion. However, she also expressed the unsupported opinion that the 1.3–acre plot could be sold for $30,000 to $40,000. Mrs. Conner provided no explanation on how she obtained this information except that she had conducted a land value study.

[¶ 27] Mr. Hilston was an appraiser and realtor with a number of years' experience who testified he agreed to help the Conners without charge. Mr. Hilston stated he could find no comparable properties in the area with condemned portions taken in the same manner and was, therefore, unable to perform an appraisal. Because he could not

perform an appraisal, he concluded he could not provide an opinion concerning the impact of the condemnation on the property's value. In his capacity as a realtor, Mr. Hilston stated he thought he could list the Conners' property for sale in "probably [the] 22 to $23,000 an acre range." He did not explain whether this reference meant the entire twenty-acre parcel, just the condemned portion, or the remainder after condemnation, nor did he provide a foundation for his opinion.

■ During Mrs. Conner's and Mr. Hilston's testimony, the district court repeatedly reminded the parties, and particularly the Conners' attorney, that it was the condemnees' burden to prove damages by establishing by competent evidence the values of their property before and after the taking. The court also offered to recess briefly and provide Wyoming case law on the before and after damages test and the burden of proof to the Conners' counsel. The district court went to extraordinary lengths to ensure the Conners' attorney understood the evidence that was required to prove the condemnation damages and that Mrs. Conner's and Mr. Hilston's unsubstantiated statements did not constitute such evidence.

■ As their last witness, the Conners called Mr. Wren who had prepared a complete appraisal for the board "in accordance with the Uniform Standards of Professional Appraisal Practice" in order "to arrive at a supportable and defensible estimate of the market value for the whole parcel of the subject property, the market value of the proposed taking, and the estimate of any damages, if any." Mr. Wren testified he had twenty-six years of appraisal experience, had various appraisal designations, and was associated with many state and national appraisal and real estate organizations. He explained the appraisal process and reviewed the four comparable properties he used to value the Conners' land. The comparable property valuations ranged from $1,400 to $1,625 per acre without adjustments to more accurately reflect the Conners' property and from $1,732 to $1,746.10 per acre with those adjustments. The adjusted values were reached with the understanding the Conners could build a home and use the entire twenty-acre parcel. Mr. Wren concluded the Conners incurred no damages beyond the loss of value of the land condemned. He valued the whole twenty-acre parcel before the taking at $35,000, the condemned 2.21 acres at $3,827.72 (2.21 × $1,732), and the parcel after the taking at $31,172.28. Mr. Wren concluded the only damage that would occur from the taking was the loss of the 2.21 acres. The Conners presented no evidence concerning any damages they may have incurred due to the board's alleged inverse condemnation of their property prior to the eminent domain action.

■ [¶ 30] At the close of the Conners' case, the court removed the jury while the board moved for dismissal of the inverse condemnation counterclaim [10] and judgment as a matter of law on the damages pursuant to W.R.C.P. 50(a)(1). The court granted judgment as a matter of law on both motions holding the Conners did not present competent evidence upon which a jury could rely to determine eminent domain damages other than the expert opinion of the board's appraiser. Nor did they present evidence to support their inverse condemnation counterclaim. Following its ruling, the district court brought the jury back in and explained the motions and its ruling that the jury's role as fact-finder was no longer necessary because the only competent evidence consistent with the established legal standard proved the Conners should be awarded $3,827.72 in damages.

---

10. Inverse condemnation is distinct from eminent domain. 2A Julius L. Sackman, Nichols on Eminent Domain § 6.14 (3d ed.2001). Eminent domain refers to the legal process by which the government asserts its authority to condemn property. *Id.* Inverse condemnation is a cause of action a landowner may pursue to recover just compensation for a taking of his or her property when condemnation proceedings have not been instituted. *Id.; Cheyenne Airport Board v. Rogers,* 707 P.2d 717 (Wyo.1985), *dismissed,* 476 U.S. 1110, 106 S.Ct. 1961, 90 L.Ed.2d 647 (1986). The Conners' answer and counterclaim filed April 13, 1998, sets forth a counterclaim for inverse condemnation pursuant to Wyo. Stat. Ann. § 1–26–516 (LexisNexis 2001).

We undertake a full review of the record without deference to the views of the trial court. The test to be applied is whether the evidence is such that, without weighing the credibility of the witnesses or otherwise considering the weight of the evidence, there can be but one conclusion as to the verdict that reasonable persons could have reached. We view the evidence in the light most favorable to the nonmoving party, and give that party the benefit of all reasonable inferences that may be drawn from the evidence. When the facts permit the drawing of more than one inference, it is for the jury to choose which will be used. If the inferences favorable to the movant are subject to doubt, or if parallel inferences can be drawn, the motion appropriately is denied.

*Wyoming Medical Center, Inc. v. Murray,* 2001 WY 63, ¶ 7, 27 P.3d 266, ¶ 7 (Wyo.2001) (citations omitted).

[¶ 31] The district court's reasons for dismissal are borne out by our *de novo* review. We concur with the district court's remarks on the record regarding the eminent domain damages:

The Supreme Court has noted that there has to be proper foundation for the opinions relative to the before and after taking approach, and that it needs to be presented by competent evidence....

We do not have that here, however. We have ... Mrs. Conner espousing some very loose estimates and valuations as to the value of the property I think before the taking, with an estimate of what that property might be with water and electric.

We had some information from Mr. Hilston as to what he might list the property before but we have little or no other appraisal information from him and surely no opinion testimony given in accord with the requirements that there be competent evidence set forth within the structures of the before and after taking.

So we have the [Conners] calling Mr. Wren and he is the sole source ... of proper appraisal information to aid the Court and the jury in what that taking should be.... [H]is evaluation was based upon the taking of the entire 2.21 acres, but basing it upon the value of the full 20–acre parcel before and after the taking, based upon comparables and accepted real estate appraisal information....

"Despite the fact that judgment as a matter of law should be granted cautiously and sparingly, the district court has an obligation to direct entry of such a judgment where there is legally insufficient evidence to support a verdict on a particular issue." *Sayer v. Williams,* 962 P.2d 165, 167 (Wyo.1998); *see also Rudy,* 997 P.2d at 485. We conclude the district court properly granted judgment as a matter of law on the inverse condemnation counterclaim and the damages valuation.

[¶ 32] Affirmed.