The BOARD OF COUNTY COMMIS-
SIONERS OF JOHNSON COUNTY,
Wyoming, a body corporate and politic,
Appellant (Plaintiff),

v.

Warren D. ATTER and Geraldine Atter,
and Atter Ranch Limited Partnership,
Appellees (Defendants).

Warren D. ATTER and Geraldine Atter,
Appellants (Defendants),

Atter Ranch Limited
Partnership (Defendant),

v.

The BOARD OF COUNTY COMMIS-
SIONERS OF JOHNSON COUNTY,
Wyoming, a body corporate and politic,
Appellee (Plaintiff).

Nos. 86–107, 86–108.

Supreme Court of Wyoming.

March 23, 1987.

Greg L. Goddard, Johnson County and Pros. Atty., Buffalo, for Bd. of County Com'rs.

Dennis M. Kirven of Kirven and Kirven, Buffalo, for Atters.

Before BROWN, C.J., and THOMAS, CARDINE, URBIGKIT and MACY, JJ.

CARDINE, Justice.

This is an eminent domain action. Appellant Board of County Commissioners of Johnson County appeals from the district court's order dismissing its complaint seeking condemnation of two parcels of land owned by appellees Warren and Geraldine Atter and Atter Ranch Limited Partnership.

Three issues are presented on appeal. The first, as stated by appellant, is whether the trial court improperly substituted its judgment for that of a legislative body in dismissing appellant's complaint on the ground of lack of public necessity. Appellant's second issue is whether § 1–26–801, W.S.1977, Cum.Supp.1986, permits condemnation of private land for fill material when that land is not a site for public improvement. By way of cross-appeal, appellees assert that the district court erroneously denied them an award of litigation expenses as provided in § 1–26–512(a), W.S. 1977, Cum.Supp.1986.

We affirm in part and reverse in part.

On November 6, 1984, the Board of County Commissioners of Johnson County (hereinafter Board) filed a "preapplication" with the Federal Aviation Administration (FAA) for a grant to design a runway extension for the Johnson County airport, located near Buffalo, Wyoming. A runway extension was designed which would increase the length of the runway from 4,544 feet to 6,200 feet and bring the airport into compliance with the federal criteria for Basic Utility Stage II Aircraft. The Board decided to proceed with the runway extension project.

Initially the plan was to construct the entire runway extension to the northwest. In August of 1985, however, the Board decided to add 900 feet of the extension to the northwest and 760 feet to the southeast. The decision to extend the runway to the southeast made it necessary for the County to acquire two noncontiguous parcels of land owned by appellees Warren and Geraldine Atter and Atter Ranch Limited Partnership (hereinafter Atters). One parcel (parcel No. 2), encompassing 17.64 acres, was needed for the runway extension and "clear zone." The other parcel (parcel No. 1), containing 6.22 acres, contained fill material which the County wished to use for the airport project.

The airport engineers contacted appellees and informed them of the County's interest in acquiring parcel No. 2. They also offered a royalty for the fill material contained in parcel No. 1. After months of negotiation, the parties were unable to agree on a price for parcel No. 2 or the value of the fill material in parcel No. 1. On January 7, 1986, the Board adopted a resolution authorizing the county attorney to file a complaint for condemnation of both parcels because they were "necessary for the * * * airport expansion." The county attorney filed the complaint the same day.

The Atters moved to dismiss the action. At a hearing on the motion to dismiss the Atters advanced two theories. First, they

asserted that the Board could not demonstrate public necessity for the runway extension project as required by § 1–26–504(a), W.S.1977, Cum.Supp.1986,[1] and Rule 71.1, W.R.C.P.[2] Second, they contend that the County had no authority to condemn parcel No. 1 and thereby obtain the desired fill material because that parcel was not a public improvement site. In response, the Board maintained that it had already determined that acquisition of the Atters' property was necessary and that its determination was not subject to judicial interference unless shown to be arbitrary, capricious, or a result of fraud. The Board further asserted that the County's need for fill material from parcel No. 1 constituted a "necessity allowing for condemnation" of that parcel.

After an evidentiary hearing and extensive briefing by the parties, the district court granted the Atters' motion to dismiss. The court concluded that the County had failed to make a showing that "there [was] a reasonable basis for the Commissioners to determine [that] there is a necessity to enlarge or lengthen the runway." The district court also concluded that the County was without authority to condemn parcel No. 1 merely for the purpose of acquiring fill material at an economical cost. After dismissal of its complaint, the Board moved the district court for reconsideration and the taking of additional testimony and oral arguments. This motion was granted, and another evidentiary hearing was held. After this second hearing the court again concluded, for the same reasons, that the Board's complaint should be dismissed without prejudice. The Board now appeals from the order of dismissal.

## MOOTNESS

After the Board filed its notice of appeal, the Atters filed a motion to dismiss this appeal for mootness. In support of their motion to dismiss, the Atters alleged that while this appeal was pending the Board had abandoned its plan to extend the runway to the southeast and instead, pursuant to its original plan, had decided to construct the entire extension to the northwest, thus making acquisition of the Atter lands unnecessary. The Board resisted the motion, asserting that: (1) the Board had not withdrawn its resolution authorizing condemnation of the Atter lands; (2) regardless of the location of the runway extension, the airport could not meet FAA requirements without acquiring the Atter lands; and (3) "additional needs for the airport and the Atter land are contemplated." At oral argument, the Board conceded that the runway extension had been constructed to the northwest.

With these considerations in mind, we must determine whether the appeal now before us is moot.

"We have often repeated the universal rule that a reviewing court will dismiss a case when, pending appeal, an event occurs which renders a cause moot and makes a determination of the issues unnecessary. Appellate courts will not hand down decisions which cannot be given effect or which pertain to matters that may arise in the future.

"In determining whether events subsequent to the Commission's order render this case moot, we will examine all such events called to our attention by the parties to this petition." (Citations omitted.) *Gulf Oil Corporation v. Wyoming Oil and Gas Conservation Commission*, Wyo., 693 P.2d 227, 233 (1985).

With the completion of the total runway extension to the northwest, little is left of the controversy that existed between the

---

1. See note 4, infra.

2. Rule 71.1(e), W.R.C.P., provides in relevant part:
"The hearing shall be held not less than fifteen (15) days after service upon the defendant, unless the defendant otherwise consents in writing. At the hearing, which may be adjourned from time to time, the district judge shall require evidence that notice of hearing has been given as provided in this rule, and shall hear and determine the questions of the plaintiff's right to make the appropriation, plaintiff's inability to agree with the owner, the necessity for the appropriation, and shall hear proofs and allegations of all parties interested touching the regularity of the proceeding."

Board and the Atters at the time the district court dismissed the Board's complaint for condemnation.

The Board's resolution of March 4, 1986, stated that the Atter lands were necessary for "extension of the runway, fill material, land use protection and clear zone." After passing that resolution, however, the Board decided to construct the runway extension to the northwest, and the fill material for the extension has apparently been obtained elsewhere. By the time oral arguments were presented, the Board no longer asserted any need for fill material; therefore, we will not address the propriety of the district court's ruling on that issue. As far as we can tell, all that remains is the Board's possible need for clear zone.[3] We cannot tell from the record whether the clear zone that the Board now desires is the same clear zone that it originally needed for the proposed southeast portion of the runway extension. The facts brought out at oral argument indicate that it is not and that the area now needed for clear zone is different in both size and location from the clear zone specified in the Board's earlier plan. This was not disputed and logically must be correct, for the required clear zone depends upon the location of the runway. Therefore, the public necessity issue, as it relates to the Board's need for clear zone, appears to be moot as well. We are reluctant to make that determination, however, on the unsettled facts presented to us on appeal. The district court is the proper forum for the resolution of disputed and clouded factual issues. We, therefore, direct the district court to decide the remaining mootness issue on remand. Because the district court could conceivably find that the case is not entirely moot, we will address the public necessity issue raised by appellant.

## REASONABLE NECESSITY

■ Historically, the decision to exercise the power of eminent domain has been treated as a legislative determination that could not be reviewed by the judiciary unless shown to be an abuse of discretion or the result of fraud or bad faith. See generally, 1A Nichols on Eminent Domain §§ 4.11 and 4.11[2] (1985). This general rule is not applicable, however, when the legislature has conferred upon the courts the duty of determining public necessity. See id. at § 4.11[4]. This is precisely what happened when the Wyoming legislature enacted § 1–26–504, W.S.1977, Cum.Supp. 1986.[4] It conferred upon the courts the duty of making certain factual determinations, including whether "[t]he public interest and necessity require the project." Section 1–26–504(a)(i), W.S.1977, Cum.Supp. 1986. Consequently, public necessity is a justiciable issue in Wyoming.

■ Section 1–26–504(a) places the burden of proving public necessity on the condemnor.[5] The manner in which a condemnor may satisfy this burden depends on whether the condemnor falls within subsec-

3. The Board's need of the Atter lands for "land use protection" has never been clearly explained.

4. Section 1–26–504, W.S.1977, Cum.Supp.1986, provides:
   "(a) Except as otherwise provided by law, the power of eminent domain may be exercised to acquire property for a proposed use only if all of the following are established:
   "(i) The public interest and necessity require the project or the use of eminent domain is authorized by the Wyoming Constitution;
   "(ii) The project is planned or located in the manner that will be most compatible with the greatest public good and the least private injury; and
   "(iii) The property sought to be acquired is necessary for the project.

   "(b) Findings of the public service commission, the interstate commerce commission and other federal and state agencies with appropriate jurisdiction are prima facie valid relative to determinations under subsection (a) of this section if the findings were made in accordance with law with notice to condemnees who are parties to the condemnation action and are final with no appeals from the determinations pending."

5. In lieu of establishing public interest and necessity, a condemnor may satisfy § 1–26–504(a)(i), W.S.1977, Cum.Supp.1986, by showing that "the use of eminent domain is authorized by the Wyoming Constitution." In the present case, the County's power to exercise eminent domain arises not from the Wyoming Constitution, but from § 1–26–801, W.S.1977, Cum. Supp.1986.

tion (b) of § 1–26–504. Those condemnors identified in subsection (b) may discharge their burden by merely introducing their findings on the requirements of subsection (a), as the statute provides that such findings are "prima facie valid." Section 1–26–504(b). The findings of all other condemnors, however, are not "prima facie valid." Therefore, those condemnors who do not fall within subsection (b), like the Board of County Commissioners (not a state agency, see § 16–3–101(b)(x), W.S.1977) in the present case, must put on evidence of public necessity at the hearing before the district court; a resolution of necessity is not prima facie sufficient.[6]

■ Once a condemnor has established a prima facie case of public necessity, either by introducing its findings on the matter as provided in subsection (b) or by the production of evidence which factually supports its determination of public necessity, the burden then shifts to the condemnee who "must then either concede the existence of a necessity or be prepared to show bad faith or abuse of discretion as an affirmative defense." *City of Jacksonville v. Griffin*, Fla., 346 So.2d 988, 990 (1977).

■ Initially, the correct procedure was followed by the district court in this case. Two evidentiary hearings were held. The Board called witnesses who testified to the necessity of the project. The court then concluded that the Board had not met its burden of establishing necessity. That conclusion was erroneous. The error arises from the court's misinterpretation of "public necessity" as that term appears in § 1–26–504(a)(i), supra. When a condemn-

or seeks to establish the requirement of necessity in an eminent domain proceeding, it need only show a *reasonable* necessity for the project. As explained by one court, the term "necessity," when used in the context of an eminent domain proceeding, means "reasonably convenient or useful to the public." *City of Dayton v. Keys*, 21 Ohio Misc. 105, 252 N.E.2d 655, 659 (1969). A showing that the project will increase public safety is sufficient. See *Greasy Creek Mineral Company v. Ely Jellico Coal Company*, 132 Ky. 692, 116 S.W. 1189 (1909).

In the present case, the Board presented evidence which showed, among other things, that the airport project would result in increased safety for pilots and passengers. In doing so, the Board satisfied its burden of establishing that the public necessity required the project. At that point the district court could dismiss the complaint only if the Atters demonstrated that the Board acted in bad faith or that its actions were fraudulent or constituted an abuse of discretion. No such showing was made. The district court erred in dismissing appellant's complaint for condemnation on the ground of lack of public necessity.

## LITIGATION EXPENSES

In their cross-appeal the Atters assert that the district court erred in denying them litigation expenses as required by § 1–26–512(a), W.S.1977, Cum.Supp.1986. That section provides in relevant part:

"A public entity may not commence a condemnation action until it has first adopted a written resolution in substantial conformity with this section, autho-

---

**6.** This interpretation of § 1–26–504 is supported by the legislative history of the Wyoming Eminent Domain Act. In drafting the Act, the legislature relied extensively on the California Eminent Domain Law and the Uniform Eminent Domain Code. See Comment, Wyoming Eminent Domain Act: Comment on the Act and Rule 71.1 of the Wyoming Rules of Civil Procedure, 18 Land & Water L.Rev. 739 (1983). In fact, § 1–26–504(a) is nearly identical to § 1240.030 of the California Eminent Domain Law. In addition, the Wyoming Act, like that of California, requires that a public entity must adopt a resolution of necessity before it can exercise the power of eminent domain. Section

1–26–512, W.S.1977, Cum.Supp.1986, § 1240.-040, Cal.Civ.Proc.Code (West 1982).

The California Act provides that a resolution of necessity adopted by a public entity, such as a county governing body, "conclusively establishes" the requirements to exercise eminent domain. Section 1245.250, Cal.Civ.Proc.Code (West 1982). The Wyoming Act contains no parallel provision. Under the Wyoming Act, a county governing board's resolution of necessity is not conclusive nor are its findings "prima facie valid." Therefore, the district court must look beyond the language of the resolution and examine the facts underlying the board's determination of necessity.

rizing commencement and prosecution of the action. The authorization may be amended or rescinded at any time before or after commencement of the condemnation action but if rescinded the public entity shall pay the litigation expenses of the condemnee."

The Atters maintain that the district court's dismissal of the Board's complaint effected a rescission of the resolution adopted by the Board. Alternatively, they contend that the Board rescinded the resolution of January 7, 1986, by adopting a second resolution covering the same subject matter on March 4, 1986. We disagree.

■ We have already observed that when the legislature enacted the Wyoming Eminent Domain Act, it relied heavily on the Uniform Eminent Domain Code and the California Eminent Domain Law. Section 1303 of the Uniform Eminent Domain Code, which addresses litigation expenses, provides:

"(a) The court shall award the defendant his litigation expenses, in addition to any other amounts authorized by law, if the action is wholly or partly dismissed for any reason.

"(b) If the scope of the property to be taken is reduced as the result of (1) a partial dismissal, (2) a dismissal of one or more plaintiffs, or (3) a final judgment determining that the plaintiff cannot take part of the property originally sought to be taken, the court shall award the defendant the portion of his litigation expenses attributable to the property within the scope of the reduction." Uniform Eminent Domain Code, § 1303, 13 U.L.A. 128–129 (1986).

The California Eminent Domain Law also requires payment of litigation expenses to a condemnee if "[t]he proceeding is wholly or partly dismissed for any reason." Section 1268.610(a)(1), Cal.Civ.Proc.Code (West 1982). The Wyoming legislature, however, did not follow this approach. Instead it enacted § 1–26–512, supra, which contemplates an award of litigation expenses only if the public entity which adopted the resolution authorizing condemnation later rescinds that resolution. The Board has not rescinded its resolution.

We find no merit in the Atters' argument that the Board's adoption of a second resolution covering the same subject matter amounts to a rescission of the earlier resolution. Two differences exist between the resolution adopted by the Board on January 7, 1986, and the similar resolution adopted on March 4, 1986. First, the March resolution adds "the Atter Ranch Limited Partnership" as an owner of the lands to be acquired. Second, the March resolution contains a more detailed description of the purposes for which the land is needed. The Atters contend that these changes amounted to a "rescission" of the January resolution; the Board asserts that the changes amount to an "amendment" of the January resolution. Section 1–26–512, supra, requires payment of litigation expenses in the event of a "rescission" but not an "amendment" of a resolution authorizing condemnation.

■ Because the Wyoming Eminent Domain Act does not define "amend" or "rescind," we must apply the general rule which provides that in interpreting statutes, "[w]ords and phrases shall be taken in their ordinary and usual sense." Section 8–1–103, W.S.1977, Cum.Supp.1986. Webster's Third New International Dictionary (1981) defines "rescind" as "to take back: annul, cancel" and defines "amend" as "to change or modify in any way for the better." When the Board adopted the second resolution, it still needed the Atter lands for the southeast portion of the runway extension. Clearly it did not intend to "take back" the condemnation resolution at that time. The changes found in the March resolution reflect a desire to clarify and correct the January resolution. Thus, we conclude that the adoption of the March resolution was an amendment and not a rescission of the January resolution.

The district court's order denying litigation expenses is affirmed, and the balance of the case is reversed and remanded to the district court for proceedings consistent with this opinion.