**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**September 4, 2009**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

BURLINGTON NORTHERN
SANTA FE RAILWAY COMPANY,
a Delaware corporation,

　　　　Plaintiff-Counter-
　　　　Defendant-Appellee,

v.

A 50-FOOT WIDE EASEMENT
CONSISTING OF 6.99 ACRES
MORE OR LESS, OVER THE
FOLLOWING DESCRIBED REAL
PROPERTY: TOWNSHIP 48 NORTH,
RANGE 70 WEST: SECTION 20:
NW1/4SW1/4; SW1/4NW1/4;
SE1/4NW1/4; SW1/4NE1/4;
SE1/4NE1/4; NE1/4NE1/4

　　　　Defendant-Appellant,

GALLATIN FUELS INC.,
a Pennsylvania corporation;
MARJORIE W. GALLET, AKA
Marjorie W. Whyel; J. ALLEN
WHYEL; H. SCOTT WHYEL,

　　　　Defendants-Counter-
　　　　Claimants-Appellants.

No. 09-8003
(D.C. No. 2:07-CV-00147-CAB)
(D. Wyo.)

**ORDER AND JUDGMENT**[*]

---

[*]　　After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is

(continued...)

Before **BRISCOE**, **HOLLOWAY**, and **EBEL**, Circuit Judges.

Appellants, referred to collectively hereafter as "Gallatin," argue that the district court made a number of errors in entering an order of condemnation in favor of appellee Burlington Northern Santa Fe Railway Company ("BNSF") in regard to the 50-foot wide tract of land described in the caption (50-foot tract). Gallatin asserts six points of error. Because we find that none of them have merit, we affirm the district court's condemnation order and judgment, exercising jurisdiction under 28 U.S.C. § 1291.

I.

BNSF sought to condemn the 50-foot tract because it was necessary to provide support for one of three tracks that it had running through the area of Wyoming in question. Gallatin owns not only the 50-foot tract, but also a significant portion of other land on both sides of these three tracks. The main interest in this property on the part of the defendants that make up Gallatin is for the coal that apparently lies under the property. But the property is also leased for agricultural purposes and used for hunting and BNSF maintains a railroad

[*](...continued)
therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

crossing for Gallatin's use.  BNSF claimed that it already had a legal right-of-way for the land on which all three tracks are located, but it sought to purchase the 50-foot tract in order to provide proper slope support for the recently added third track, and to install a fire break and access road.  Prior to the lawsuit, the parties engaged in extensive negotiations on a number of issues, including the maintenance of the existing crossing, the possible construction of an overpass, the railroad's right to the land on which the tracks were built, and the purchase of the 50-foot tract.  BNSF eventually filed a complaint seeking to quiet title to or condemn the land necessary for its railroad tracks.  But the description of the land set forth in the complaint did not originally include the 50-foot tract.  It was eventually allowed to amend its complaint to include the 50-foot tract as part of the land it was seeking to condemn.  The parties eventually reached a settlement as to the claims regarding all the property except the 50-foot tract and Gallatin's claim that BNSF's condemnation action was statutorily precluded by its failure to maintain a reasonably adequate means of crossing the railroad.  Following a bench trial, the district court entered findings of fact, a condemnation order, and a judgment granting BNSF's request for condemnation of the 50-foot tract.  Gallatin has appealed, raising six points of error.

> In an appeal from a bench trial, we review the district court's factual findings for clear error and its legal conclusions de novo. Findings of fact are clearly erroneous when they are unsupported in the record, or if after our review of the record we have the definite and firm conviction that a mistake has been made.  If the district

-3-

court's account of the evidence is plausible in light of the record viewed in its entirety, the court of appeals may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. This admonition applies equally regardless of whether the district court's factual findings are based on credibility determinations or on documentary evidence.

*La Resolana Architects, PA v. Reno, Inc.*, 555 F.3d 1171, 1177 (10th Cir. 2009) (quotations and citations omitted). In this diversity case we apply Wyoming law.

II.

In its first point, Gallatin argues it had a constitutional and statutory right to a trial by jury on the issue of reasonable access. Gallatin does not dispute that, generally, there is no right to a jury in a condemnation case under Wyoming law. *See Colorado Interstate Gas Co. v. Uinta Dev. Co.*, 364 P.2d 655, 657 (Wyo. 1961) ("It is well settled that there is no constitutional right to a trial by jury in condemnation cases, and in the absence of a special constitutional or statutory provision such a right does not exist.").

Nevertheless, Gallatin points to Federal Rule of Civil Procedure 71.1(k), which provides that Rule 71.1 "governs an action involving eminent domain under state law. But if state law provides for trying an issue by jury–or for trying the issue of compensation by jury or commission or both–that law governs." Gallatin argues that § 1-26-812 of the Wyoming Statutes provides for a right of trial by jury.

-4-

Under § 1-26-812(a): "[w]hen any person owns land on both sides of any railroad, the company owning the railroad shall construct and maintain reasonably adequate means of crossing the railroad." As recognized by Gallatin, § 1-26-812 also provides the steps a railroad must take and the conditions it must meet for the railroad to be able to abandon, close, or fail to maintain such a crossing. If the steps are not followed or the conditions not met, the railroad is precluded from exercising the condemnation powers found in § 1-26-810. A landowner therefore has a defense to condemnation when the railroad has not properly maintained a crossing or closed a crossing without taking the required steps or fulfilling the required conditions. Gallatin duly presented § 1-26-812 as one of its affirmative defenses.

Gallatin's argument that § 1-26-812 also provides a cause of action that is to be tried by a jury is based on subsection (f), which reads: "Nothing in this section shall be construed as limiting or prohibiting any person from maintaining any other action at law for a railroad's failure to maintain a crossing, or abandonment or closing of a crossing." Gallatin argues on appeal that the "explicit language" of this subsection "provides for *actions at law* when railroad crossings are claimed to be abandoned, closed, not maintained, or otherwise interfered with when a landowner owns property on both sides of a crossing." Aplt. Br. at 12 (emphasis added). It asserts that since "actions at law" are historically tried to a jury, it had the right to a jury trial. *Id*.

-5-

It seems clear that § 1-26-812(f) *itself* does not "afford[] individuals the right to trial by jury." Aplt. Br. at 11. That subsection merely seeks to confirm that the statute does not impact *any other* action at law that a landowner might bring against a railroad that failed to properly maintain a crossing. It therefore appears that Gallatin is arguing that the language of subsection (f) is essentially evidence that *some* action at law exists for challenging a railroad's failure to maintain a crossing, or abandonment or closing of a crossing.

First, this is incorrect. The fact that § 1-26-812(f) ensures that the statute does not prevent or hinder a landowner from "maintaining any other action at law for a railroad's failure to maintain a crossing, or abandonment or closing of a crossing[,]" does not necessarily mean that any such "other action at law" exists under Wyoming law, or that if such an action at law exists that it would apply in this situation. Second, and more importantly, even if some such action at law *does* exist, the relief sought by Gallatin in its "counterclaim" was an injunction against BNSF's condemnation action. Actions seeking injunctions are historically *equitable* in nature, *see Reno Livestock Corp. v. Sun Oil Co. (Delaware)*, 638 P.2d 147, 153 (Wyo. 1981) (noting that "[i]njunctive relief is designed not to deal with past violations, but to avoid future wrongs" and that "[p]revention of impending future injury is a recognized function of a court of equity"), and equitable actions are historically tried to the court, *see Ferguson v. Ferguson*, 739 P.2d 754, 758-59 (Wyo. 1987) (noting that actions in equity are triable to the court, subject to the

-6-

court's power to order any issue to be tried to a jury). Thus, we find no reason to overturn the district court's refusal to grant a jury trial.

## III.

In its second point, Gallatin argues that the district court erred in denying its motion for mistrial because it was prejudiced by the district court judge allegedly falling asleep a number of times during the trial.

> We review the district court's denial of a motion for mistrial for abuse of discretion. In deciding whether the court abused its discretion, we assume that the trial judge is in the best position to determine whether an incident was so serious as to warrant a mistrial. Denial of a motion for a new trial is within the discretion of the trial court and will not be disturbed on appeal in the absence of manifest abuse of discretion.

*Rios v. Bigler*, 67 F.3d 1543, 1550 (10th Cir. 1995) (quotations and citations omitted).

In denying the motion, while the district court judge admitted he nodded off at times, he asserted that such instances could not have been for more than a minute at a time, he did not think he missed anything, and even if something was initially missed, no prejudice occurred because he had access to a transcript. Gallatin argues generally that "the judicial somnolence in this case was neither brief, exceptional, nor confined to procedural or other matters unrelated to the legal issues involved." Aplt. Opening Br. at 14.

But neither the motion before the trial court, the affidavits that supported that motion, nor Gallatin's appellate brief contain any precise allegations as to

-7-

how long the judge slept or the nature of the testimony missed during those periods of time. Consequently, Gallatin is arguing, without supporting authority, that "judicial somnolence" of any duration *necessarily* requires a mistrial. We are not prepared to take such an extreme position. While a judge falling asleep for any period of time is unfortunate, a mistrial requires at least some showing of harm. *See Rios*, 67 F.3d at 155 (requiring a "serious" incident to warrant a mistrial).

IV.

In its third point, Gallatin argues that the district court erred when it admitted evidence of confidential settlement negotiations and then relied upon that evidence in reaching its decision. Federal Rule of Evidence 408 states that evidence of a party's "furnishing or offering or promising to furnish–or accepting or offering or promising to accept–a valuable consideration in compromising or attempting to compromise the claim" or evidence of a party's "conduct or statements made in compromise negotiations regarding the claim" is "not admissible on behalf of any party, when offered to prove liability for, invalidity of, or amount of a claim that was disputed as to validity or amount, or to impeach through a prior inconsistent statement or contradiction." Although agreeing that BNSF had to show it engaged in good faith negotiations in order to prove its case, Gallatin asserts that BNSF was only allowed to present evidence of negotiations that took place *prior to* the lawsuit. Gallatin argues that the court violated Rule

408 by admitting evidence of *post-filing* negotiations, thereby prejudicing Gallatin. We deny this point.

We must first note that Gallatin does not describe the complained-of testimony in any detail in its brief, simply directing this court's attention to certain pages of the trial transcript. This is problematic because Rule 408 is not an absolute prohibition on the admission of evidence regarding settlement negotiations. But Gallatin makes the general argument that the testimony in those passages prejudiced Gallatin by showing it negotiated in bad faith in the post-filing settlement negotiations.

We cannot see how Rule 408 could apply in this situation. Gallatin argues that BNSF only had to show that it negotiated in good faith up until the time it filed its legal action. BNSF disagrees, arguing it had to show that it continued good-faith negotiations after the legal action was filed. We need not decide which party is correct. If BNSF is correct, then clearly it would be allowed to present evidence regarding post-filing negotiations. But if Gallatin is correct, then evidence of post-filing negotiations could not be said to have been "offered to prove liability for, invalidity of, or amount of a *claim* that was disputed as to validity or amount, or to impeach through a prior inconsistent statement or contradiction." Fed. R. Evid. 408 (emphasis added). In such a case, evidence of post-filing conduct would be irrelevant to the question of whether BNSF had met its burden of showing it negotiated in good faith prior to filing its legal action,

especially since, as pointed out by Gallatin in its appellate brief, Gallatin had no duty to negotiate in good faith at *any* point.

V.

In its fourth point, Gallatin argues that the district court erred when it allowed BNSF to amend its complaint and caption to add the 50-foot tract. BNSF filed its complaint on June 29, 2007. On March 3, 2008, it filed a motion to amend asserting that the original complaint failed to include the 50-foot tract by mistake. BNSF argued that Gallatin had known since at least September 24, 2007, that the land BNSF was seeking to obtain in the lawsuit included the 50-foot tract and that a corrected legal description had been provided on December 3, 2007. BNSF argued that judicial economy would be better served by amending the complaint than by making BNSF file a second lawsuit to condemn the 50-foot tract.

While Gallatin admitted that negotiations prior to the lawsuit had included the 50-foot tract and that it had indeed received the information referenced by BNSF in September and December of 2007, it claimed that it had hired its own surveyors to determine what BNSF was actually seeking in the complaint and were told that the 50-foot tract was not included. It argued it should be entitled to rely on the information in the complaint, that there was no good excuse for BNSF not including the 50-foot tract in the original complaint, and that Gallatin would

-10-

be prejudiced by the amendment because of the cost of the surveyors and because, among other things, it had not undertaken discovery regarding that 50-foot tract.

Federal Rule of Civil Procedure 15 provides, in regard to motions seeking to amend a complaint after a responsive pleading has been filed, that such amendments are permitted only with leave of the court and that "[t]he court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). This court "review[s] a district court's decision to grant leave to amend for abuse of discretion. A district court abuses its discretion if its decision is arbitrary, capricious, whimsical, or manifestly unreasonable." *Bylin v. Billings*, 568 F.3d 1224, 1229 (10th Cir. 2009) (quotation and citation omitted).

A magistrate judge granted BNSF's motion on April 16, 2008. The judge agreed that a defendant should be able to reasonably rely on the information presented in a complaint. But he held for BNSF, reasoning that Gallatin had generally understood that the 50-foot tract was part of the land BNSF was seeking and that prejudice could be mitigated by allowing additional discovery regarding that portion to continue until May 16, 2008. The district court subsequently held that the amendment ordered by the magistrate judge was proper. *See* Aplt. App., Vol. I at 247.

Gallatin's argument on appeal is comprised of four subpoints which we address in order. It first argues that BNSF failed to demonstrate the requisite "good cause" required by Federal Rule of Civil Procedure 16 to amend the

-11-

scheduling order. Under Rule 16(b)(4), "[a] schedule may be modified only for good cause and with the judge's consent." While Gallatin has not provided this court with the scheduling orders in this case, it acknowledges that neither the original order nor the amendments contained a deadline for amendments to pleadings. Nevertheless, it argues that because Rule 16(b)(3)(a) requires a scheduling order to limit the time available to amend the pleadings, and "the deadline for amending complaints invariably precedes that set for the submission of dispositive motions," Aplt. Opening Br. at 20 n.5, then this court should consider the motion to amend the complaint a motion to amend the scheduling order and the "good cause" standard should apply. We disagree.

First, Gallatin does not assert that it complained to the district court about the lack of an amendment deadline in the scheduling order. Since no such deadline was included, the amendment motion can not be considered a motion to amend the scheduling order. Further, the motion to amend was filed on the day of the deadline for dispositive motions, and even if Gallatin is correct that "the deadline for amending complaints *invariably* precedes that set for the submission of dispositive motions," *id*. (emphasis added), there is no evidence that if an amendment deadline *had* been set, BNSF would not have complied with it. Thus, we decline to consider the "good cause" standard of Rule 16(b)(4).

Gallatin next argues that the district court abused its discretion in allowing the complaint to be amended under Federal Rule of Civil Procedure 15. It asserts

-12-

that it had spent a considerable amount of time and money to determine the property involved in the dispute and that "[t]he discovery was far from complete on this issue, both as to Gallatin's inquiries of BNSF as well as preparation of the condemnation proceeding." Aplt. Br. at 25.

> The district court has wide discretion to recognize a motion for leave to amend in the interest of a just, fair or early resolution of litigation. Rule 15 was designed to facilitate the amendment of pleadings except where prejudice to the opposing party would result. Typically, courts will find prejudice only when an amendment unfairly affects non-movants in terms of preparing their response to the amendment.

*Bylin*, 568 F.3d at 1229 (quotations, citations, ellipsis, and brackets omitted). Here, the majority of the pre-trial negotiations concerned the 50-foot tract. Considering the district court had already moved back the trial date and then moved back the discovery date so that further discovery could be had with regard to the 50-foot tract, and the fact that Gallatin was, at the least, very familiar with that parcel of land, we cannot say that the district court's decision to allow amendment was "arbitrary, capricious, whimsical, or manifestly unreasonable." *Id*. (quotation omitted). As for the money Gallatin asserts that it spent because of the initial failure to include the correct legal description, "the expenditure of time, money, and effort alone is not grounds for a finding of prejudice." *Id*. at 1230 (holding that the money and time plaintiffs spent preparing their case was not a sufficient showing of prejudice to preclude the district court from allowing

-13-

defendants to amend their answer to add a dispositive affirmative defense a few weeks before trial).

Gallatin next argues that the district court erred in granting BNSF's motion to amend the caption of the case. The docket shows that a month after the court's order allowing the complaint to be amended to include the 50-foot tract, the parties reached a settlement as to the claims concerning all the land but the 50-foot tract. BNSF then filed a motion to amend the caption to reflect that, at that point, only the 50-foot tract was still at issue. In opposing the motion, Gallatin argued that because BNSF's motion stated that it "originally filed the lawsuit" seeking the land that was no longer at issue, and the amended caption would show only the 50-foot tract, the motion was a "tacit admission" that BNSF had not originally intended to include the 50-foot tract as part of its complaint.

Gallatin's argument was merely an attempt to use the loose wording of the subsequent motion to relitigate the previously decided motion to amend the complaint. The district court properly determined the caption should reflect the changes in the case wrought by the amendment of the complaint and the subsequent stipulation of the parties.

Gallatin's final argument in its fourth point is that BNSF failed to comply with new Wyoming statutory notice requirements for condemnation that went into effect after BNSF filed its original complaint but before it amended its complaint to include the 50-foot tract. It argues that the district court therefore did not have

jurisdiction over the 50-foot tract. Gallatin made this argument to the district court in a motion to strike the amended complaint. In that motion, Gallatin acknowledged that under Federal Rule of Civil Procedure 15(c)(1)(B), an amended complaint would relate back to the date of the original complaint–which was filed prior to the new notice requirements going into effect–when "the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out–or attempted to be set out–in the original pleading[.]" But it argued that the claim to the 50-foot tract did not arise out of the "conduct, transaction, or occurrence set out–or attempted to be set out–in the original pleading," because the property set out in the *original* pleading had previously been occupied by the railroad, whereas the 50-foot tract had never been occupied by the railroad.

Following a hearing, the district court entered an order denying the motion to strike. In *Gilles v. United States*, 906 F.2d 1386, 1390 (10th Cir. 1990), this court found that an amended complaint grounded on "the same nucleus of operative facts" as the original complaint related back to the date of the original complaint. The district court relied on *Gilles* in holding that the amended complaint in this case related back to the date the original complaint was filed. Although Gallatin argues that the amended complaint including the 50-foot tract was not "transactionally related to the original claim," Aplt. Br. at 29, the question is whether it arose out of the "conduct, transaction, or occurrence set

-15-

out–or attempted to be set out–in the original pleading," Fed. R. Civ. P. 15(c)(1)(B). It seems clear that the claim for the 50-foot tract rose out of the conduct set forth in the original pleading. The condemnation claim in the original complaint asserted that BNSF was seeking to condemn property for a "triple track . . . necessary to transport coal from the Powder River Basin," Aplt. App., Vol. I at 23, and made clear that it was seeking to condemn the property for this triple track for, among other things, the necessary slope support for the tracks. It is clear from the record that BNSF's position has always been that the 50-foot tract was necessary for that slope support. Further, BNSF deposited $164,355 with the court at the time it filed its lawsuit. This amount evidently included compensation for the 50-foot tract since there was no suggestion that additional funds be deposited when the motion to amend was granted. Finally, the record shows that the majority of the negotiations prior to trial concerned the purchase of the 50-foot tract, including those negotiations represented by a "Final Offer Letter," discussed at trial by both parties in which BNSF offered $30,250 for the 50-foot tract, plus $44,750 for "all other loss and damage." Aplee. Supp. App., Vol. 4 at 1288. We thus affirm the district court's determination that the amended complaint related back to the date the original complaint was filed.

## VI.

In its fifth point, Gallatin challenges certain findings of fact of the district court and the sufficiency of the evidence supporting the district court's

determination that (1) BNSF had proven the requisite factors for condemnation, (2) BNSF negotiated in good faith prior to filing for condemnation, and (3) BNSF provided a reasonably adequate means of crossing the railroad tracks in question. We shall address these points in order.

As to Gallatin's first argument, we note that under Wyo. Stat. Ann. § 1-26-504(a), in order to exercise the power of eminent domain, BNSF had to prove public necessity by showing (1) that the tracks in question were necessary and in the public interest, (2) that they were planned or located in the manner that will be most compatible with the greatest public good and least public injury, and (3) that the 50-foot tract was necessary for the tracks. Gallatin challenged the final two requirements.

We first consider BNSF's burden of proof. Since BNSF is not one of the public entities identified in § 1-26-504(b), in order to discharge its burden under subsection (a), it must "put on evidence of public necessity at the hearing before the district court." *Bd. of County Commr's v. Atter*, 734 P.2d 549, 553 (Wyo. 1987).

> Once [it] has established a prima facie case of public necessity . . . by the production of evidence which factually supports its determination of public necessity, the burden then shifts to the condemnee who must then either concede the existence of a necessity or be prepared to show bad faith or abuse of discretion as an affirmative defense.

*Id.* In *Town of Wheatland v. Bellis Farms, Inc.*, 806 P.2d 281, 283 n.5 (Wyo. 1991), the Wyoming Supreme Court disagreed with a landowner's argument that a "condemnor must prove the factual elements set out in W.S. [§] 1-26-504(a) by a preponderance of the evidence[,]" holding instead that "evidence that the town has complied with the statutory requirement is sufficient." Gallatin asserts without supporting authority that the BNSF had the burden of providing "substantial evidence" supporting the requirements of § 504(a). This standard is generally used in regard to agency decisions and, under Wyoming law, "[s]ubstantial evidence is relevant evidence which a reasonable mind might accept in support of the agency's conclusions. It is more than a scintilla of evidence." *Dale v. S & S Builders, LLC*, 188 P.3d 554, 558 (Wyo. 2008) (quotation omitted). Nevertheless, it is not necessary that we determine the exact burden of proof here, in that even if the more rigorous "preponderance of the evidence" standard *were* applied, affirmance would still be required.

Based on evidence put forth by BNSF at trial, mainly through the testimony of two railroad engineers each with almost forty years of experience, the district court found that the position of the third track "conformed with prudent engineering guidelines," Aplt. App. at 357, that the soils around the Gallatin property were unstable and prone to failure, *id*. at 358, and that without the 50-foot tract, BNSF would not be able to achieve the recommended national minimum standard for railroad slopes of 2:1 throughout the entirety of the

-18-

section, *id*.  The district court further found that the 50-foot tract would be used for a fire break and access road which were necessary for prudent railroad operations.  Our review of the record convinces us there was no clear error in any of these factual findings.

The essence of Gallatin's argument is that this evidence was insufficient because BNSF's engineering experts did not give sufficiently detailed testimony and admitted that it was physically possible to have a three-track arrangement without using the 50-foot tract.  As to the specificity of the witnesses' testimony, Gallatin's argument is based on the fact that Mr. Herman, one of the engineers, could not testify as to the exact amount of land needed for a proper supporting slope for each part of the track.  Mr. Herman testified that he would have the specific information regarding the physical characteristics of each part in front of him in order to make those specific calculations.  But Mr. Herman clearly testified that the 50-foot tract was necessary to allow for a 2:1 slope through the area at question, a firebreak, and an access road and no contrary expert testimony was presented to contest this.

As to whether other options were physically possible, the witnesses admitted, for instance, that the railroad could conceivably take out the second and third track and move them closer to the first track, but that this would involve taking the railroad lines out of commission for an extended period of time and moving the tracks into an area that had previously experienced a slope failure.

They also admitted they could possibly build retaining walls along the areas in question to provide the necessary support but that doing so would be extremely expensive and imprudent in that a retaining wall failure would be more catastrophic than a slope failure. Gallatin argues, without any supporting authority, that economic feasibility may not be considered when making a condemnation determination, Aplt. Br. at 32 n.10, and that "prudence and cost are not the statutory standard," *id*. at 32.

The statutory standards that are at issue are that the project be "planned or located in the manner that will be most compatible with the greatest public good and least public injury" and that the 50-foot tract be "necessary" for the third track. Wyo. Stat. Ann. § 1-26-504(a). Clearly, a rule that safety or economic feasability can be given no consideration in condemnation proceedings would completely undermine the first of these standards. If a project costs so much that the railroad will not undertake it, there will be *no* public good. As for the second standard, in Wyoming, "[w]hen a condemnor seeks to establish the requirement of necessity in an eminent domain proceeding, it need only show a *reasonable* necessity for the project." *Atter*, 734 P.2d at 553. While the *Atter* court was considering the "necessity" of the project in question under § 1-26-504(a)(i), and not the necessity of the property in question to that project under § 1-26-504(a)(iii), we think reasonable necessity must be the standard there as well. Further, the Wyoming Supreme Court has noted that:

"broad discretion is necessarily vested in those to whom the power of eminent domain is delegated, in determining what property is necessary for the public purpose, with respect to the particular route, line, or location of the proposed work or improvement, and the general rule is that the courts will not disturb their action in the absence of fraud, bad faith, or gross abuse of discretion."

*Town of Wheatland*, 806 P.2d at 292 (quoting 1A *Nichols on Eminent Domain* § 4.11[2] at 4-215 (rev. 3d ed. 1990)). We therefore affirm the district court's determination that BNSF met the requirements of 1-26-504(a).

Gallatin's second argument is that the district court erred in determining that BNSF had negotiated in good faith in seeking to purchase the land in question prior to the case being filed. The district court found that BNSF had negotiated with over 80 landowners regarding the acquisition of the land necessary to build the third railroad track and that settlements had been reached with all of the landholders but Gallatin. It further found that extensive negotiations were undertaken and that BNSF eventually offered $10,000 per acre for the disputed land although it had calculated the fair market value to be $2,500 per acre. The court found that negotiations eventually stalled as a result of Gallatin's continuous demands and unwillingness to meet compromise, mostly over its desire to have an overpass constructed, even though BNSF had agreed to realign and fix the approaches for the existing crossing in order to improve it. Again, our review of the record convinces us that none of these findings are clear

error. Consequently, we cannot say the district court erred in determining that BNSF negotiated in good faith.

Finally, Gallatin argues that the district court erred when it found that BNSF provided a reasonably adequate means of crossing the railroad tracks in question. Gallatin's argument is that the district court gave insufficient weight to witness testimony that both it and its lessee have at times had to either wait for trains to pass or have had to use other crossings. It asserts that BNSF's arithmetic calculations of wait times should not be given significant weight because the calculations did not account for all of the possible rail traffic. Our review of the record fails to show any clear error on the part of the district court. There is no dispute that the use of the crossing is limited. The individual defendants do not live on the property and only occasionally use it for hunting. Gallatin Fuels does not use the property. The agricultural lessee moves cattle from one side of the tracks to the other twice a year and hays the property once a year. BNSF presented evidence that in February 2008 the crossing was blocked 9% of the time and that in July 2008, the crossing was passable an average of 52.38 minutes per hour. Gallatin complains about the district court noting that other crossings were available in the area because (1) it has no legal right to use those crossings, so (2) they should not have been considered. As to the first assertion, evidence was presented by BNSF that Gallatin did, in fact, have an easement to use one of the alternative crossings. As to the second assertion, even

if there was no legally enforceable right to use the other crossings it was clear from the testimony that they were regularly used at the time of trial. Gallatin presents no authority on appeal to support its assertion that the district court was prohibited from even considering their existence in determining whether the crossing provided was reasonably adequate. In short, we cannot say the district court's finding was "unsupported in the record," or that we have a "definite and firm conviction" that a mistake was made. *See La Resolana Architects, PA*, 555 F.3d at 1177.

## VII.

In its sixth point, Gallatin argues that the property the court allowed to be condemned exceeded the 200-foot limitation for railroad condemnation. Under Wyo. Stat. Ann. § 1-26-810(b): "Any land taken, appropriated and held otherwise than by the consent of the owner shall not exceed two hundred (200) feet in width unless greater width is necessary for excavations, embankments, depositing waste earth or for construction of other appurtenant facilities necessary for the operation of the railroad." This point is derivative of the Gallatin arguments previously denied. Gallatin's argument is that the width of the land involved in the settlement agreement plus the 50-foot tract exceeds the maximum width of 200 feet and that this is improper under the statute because, as argued above, Gallatin asserts that the 50-foot tract was not "necessary for the operation of the railroad." This point is therefore denied in addition to those denied above.

VIII.

The judgment of the district court is AFFIRMED.


                                                Entered for the Court


                                                David M. Ebel
                                                Circuit Judge